A00A1501. ANTHEM CASUALTY INSURANCE COMPANY
v. MURRAY.
A00A2304. ANTHEM CASUALTY INSURANCE COMPANY
v. MURRAY et al.
(542 SE2d 171)

RUFFIN, Judge.

Anthem Casualty Insurance Company asserts a subrogation lien against a $1.5 million jury verdict recovered by its insured, Barry Murray, against General Manufactured Housing, Inc. ("GMH"). Anthem sued both Murray and GMH for reimbursement of workers' compensation benefits Anthem paid to Murray. The trial court granted summary judgment in favor of both defendants. Anthem appeals the grant of summary judgment in favor of Murray in Case No. A00A1501 and in favor of GMH in Case No. A00A2304. As both cases involve the same operative facts, we have consolidated them on appeal. We now affirm in part and reverse in part for reasons which follow.

The relevant facts are not in dispute. Murray was injured on July 21, 1994, when he fell through a skylight on the roof of GMH's manufacturing plant during the course of his employment with Murray Plumbing Company.[1] His employer's workers' compensation insurance carrier, Anthem, began paying him workers' compensation benefits. Murray and his wife sued GMH for personal injuries and loss of consortium. Murray then entered into an agreement with Anthem under which he recognized that Anthem would have a subrogation lien pursuant to OCGA § 34-9-11.1 if he recovered from GMH,

---

[1] See *Gen. Manufactured Housing v. Murray,* 233 Ga. App. 382 (504 SE2d 220) (1998).

and he agreed not to settle his claims without Anthem's approval. In return, Anthem agreed not to intervene in the lawsuit.

At trial, Murray and his wife sought $5 million in damages, including past and future medical expenses, lost wages, and pain and suffering. The jury returned a general verdict in favor of Murray for $1.5 million, plus interest.[2] The trial court then gave the jury a special interrogatory form asking whether it had found any contributory negligence on the part of Murray and, if so, what percentage. The jury found that Murray was 20 percent negligent.

GMH satisfied the judgment against it. Neither GMH nor Murray paid any amount of the judgment to Anthem. Anthem sued Murray, seeking recovery of the $391,820 it had already paid him in workers' compensation benefits, as well as any future benefits it might pay. Anthem also named GMH as a defendant, alleging that GMH was on notice of Anthem's lien and was therefore obligated to reimburse Anthem. Anthem and Murray filed cross-motions for summary judgment. Murray argued that Anthem had no lien because he had not been fully and completely compensated, as required by OCGA § 34-9-11.1. GMH also moved for summary judgment. The trial court granted summary judgment to both defendants without opinion.

## Case No. A00A1501

1. Under OCGA § 34-9-11.1 (a), an employee who is entitled to workers' compensation benefits may bring an action for damages against a third-party tortfeasor. OCGA § 34-9-11.1 (b) provides that the employer — or its workers' compensation insurer — "has a subrogation lien for any benefits paid the employee and may intervene in such an action to protect and enforce such a lien."[3] This lien is limited

> to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter and shall only be recoverable if the injured employee has been *fully and completely compensated*, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.[4]

Thus, the insurer "cannot seek subrogation unless and until its

---

[2] The jury also awarded $100,000 to Murray's wife on her loss of consortium claim.

[3] *Bartow County Bd. of Ed. v. Ray*, 229 Ga. App. 333, 334 (494 SE2d 29) (1997).

[4] (Emphasis supplied.) OCGA § 34-9-11.1 (b).

insured has been completely compensated for his or her losses."[5] The insurer bears the burden of proving that the insured has been so compensated, and whether the insurer has carried that burden is a question for the trial court.[6] The statute does not indicate how to determine whether the insured has been "fully and completely compensated."

We have noted the difficulty of determining whether the employee has been fully and completely compensated when a general verdict form is used. If the jury awards more than the amount of proven economic losses, but less than the amount of total damages claimed, "reference to the general verdict alone is likely to be inadequate because of the impossibility of determining what portion of the award applied to economic losses and what portion applied to noneconomic losses."[7] As the lien is available only against recovery for economic losses, the insurer must show that the employee has been fully and completely compensated as to each category of noneconomic loss for which the insurer seeks subrogation and that no portion of the lien is taken against recovery for *noneconomic* losses.[8] "It is the responsibility of the workers' compensation provider to protect its interest by intervention and special verdict requests."[9]

Here, Anthem opted not to intervene in Murray's lawsuit, and the jury was not asked to itemize its damages award. Moreover, Anthem's counsel conceded in oral argument before the trial court that it was impossible to calculate how much of the jury award was intended as compensation for economic losses and how much for noneconomic losses. Ordinarily, under these circumstances, it would be extremely difficult for an insurer to prove that its insured received full and complete compensation within the meaning of the statute.

But in this case, Murray admitted in his briefs in this Court and in the trial court that the amount of the jury verdict plus 20 percent, or $1.875 million, would constitute "a full and complete recovery," and he made a similar statement in a complaint in a separate action for declaratory judgment against Anthem. Although this admission is not a binding admission in judicio, as Anthem asserts,[10] it is none-

---

[5] *Ray*, supra at 335.

[6] *Liberty Mut. Ins. Co. v. Johnson*, 244 Ga. App. 338, 340-341 (2), (3) (535 SE2d 511) (2000).

[7] *Ray*, supra.

[8] See *North Bros. Co. v. Thomas*, 236 Ga. App. 839, 841-842 (513 SE2d 251) (1999); *Hammond v. Lee*, 244 Ga. App. 865 (536 SE2d 231) (2000).

[9] *North Bros.*, supra at 841.

[10] Parties may "make admissions in judicio in their pleadings, motions, and briefs." (Citations and punctuation omitted.) *Froelich v. State*, 210 Ga. App. 647, 648, n. 1 (437 SE2d 358) (1993). Such admissions are binding and estop the party who made them from introducing any evidence to controvert them. Id. This rule applies, however, only to admissions of fact, not to opinions or conclusions of law or fact. See *Howell Mill/Collier Assoc. v.*

theless some evidence of the amount needed to fully and completely compensate Murray. According to Anthem, the total of the benefits it has already paid to Murray plus Murray's $1.5 million tort recovery now exceeds $1.875 million. Thus, Anthem contends that it is entitled to reimbursement for all workers' compensation benefits it has paid already and will be obligated to pay in the future above $375,000 ($375,000 plus $1.5 million equals $1.875 million).

As noted, deciding whether the insurer has shown that the insured has been fully and completely compensated is a task for the trial court.[11] By granting Murray's motion for summary judgment on this issue and denying Anthem's, the trial court essentially ruled that, as a matter of law, there was no evidence that Murray had been fully and completely compensated.[12] But Murray's admission constitutes evidence of the amount needed to fully and completely compensate him, as does the transcript of Murray's trial against GMH, in which Murray sought $5 million in damages and which is a part of the record in this case.[13] Thus, there was conflicting evidence as to whether Murray was fully and completely compensated. In light of this conflicting evidence, the trial court could not resolve the question via summary judgment, but was required instead to weigh this evidence and make a factual determination as to whether Anthem carried its burden.[14] Accordingly, we reverse the trial court's grant of Murray's summary judgment motion, affirm the trial court's denial of Anthem's summary judgment motion, and remand for further proceedings consistent with this opinion.[15]

## Case No. A00A2304

2. In its motion for summary judgment, GMH argued, among other things, that it owed Anthem no duty of reimbursement.

---

*Pennypacker's, Inc.*, 194 Ga. App. 169, 172 (2) (390 SE2d 257) (1990). As the question of whether an insured has been fully and completely compensated within the meaning of OCGA § 34-9-11.1 is a mixed question of law and fact, Murray's statement does not have the effect of a judicial admission.

[11] See *Liberty Mut.*, supra.

[12] Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c).

[13] Presumably, Murray could argue to the trial court that the evidence in the tort case could have supported a much greater damages award and that the jury verdict, therefore, did not fully and completely compensate him.

[14] See *Liberty Mut.*, supra.

[15] We note that, for purposes of remand, any reimbursement of benefits to which Anthem may be entitled is statutorily limited to the amount of Murray's tort recovery. See OCGA § 34-9-11.1 (b); *Rowland v. Dept. of Administrative Svcs.*, 219 Ga. App. 899-900 (466 SE2d 923) (1996) (lien lies "against the worker's tort recovery"). Put another way, in no event may Anthem recover more than $1.5 million from Murray, no matter how much it pays him in workers' compensation benefits.

Anthem contends that GMH had actual notice of Anthem's subrogation lien and was therefore obligated to pay the judgment to Anthem, rather than Murray. We agree with GMH.

The right of an employer or insurer to seek subrogation under OCGA § 34-9-11.1 is not absolute.[16] Because that right "arises solely by operation of statute,"[17] the insurer must follow the specific procedures set forth in the statute in order to protect its subrogation lien. The statute provides that an insurer "may intervene" in a lawsuit by the injured employee against a third-party tortfeasor to "protect and enforce" its subrogation lien against the tort recovery.[18] If the injured employee does not sue the third-party tortfeasor within one year of the date of injury, then the insurer may "assert the employee's cause of action in tort, either in its own name or in the name of the employee."[19] In either case, the insurer's right of action against a third party is derivative of the injured employee's claim; the insurer "has no right to pursue its own independent action against the third part[y]."[20]

Anthem did not intervene in Murray's lawsuit against GMH. Instead, Anthem voluntarily relinquished its right to participate in the action to protect and enforce its subrogation lien. Nothing in OCGA § 34-9-11.1 gives Anthem the right to now file an independent action against GMH for failing to pay the tort judgment to Anthem, rather than to Murray, the plaintiff.

Anthem relies upon *Rowland v. Dept. of Administrative Svcs.*,[21] but that case is distinguishable. In *Rowland*, the injured employee (Young) settled with the third-party tortfeasor (Rowland) without the knowledge of his employer (DOAS), who had been paying him workers' compensation benefits. DOAS then brought suit against Rowland, asserting its subrogation rights under OCGA § 34-9-11.1. Rowland, who was unaware that DOAS had been paying workers' compensation benefits and had a subrogation lien, "contended that her settlement with Young extinguished any subrogation lien against her."[22] We agreed, reasoning that DOAS was statutorily authorized to sue Rowland only on claims that Young had against Rowland and that Young's settlement with Rowland had erased those claims.[23] We

---

[16] *Ga. Star Plumbing v. Bowen*, 225 Ga. App. 379, 382 (484 SE2d 26) (1977).

[17] (Punctuation omitted.) *K-Mart Apparel Corp. v. Temples*, 260 Ga. 871, 873 (1) (401 SE2d 5) (1991).

[18] OCGA § 34-9-11.1 (b); see generally *Dept. of Administrative Svcs. v. Brown*, 219 Ga. App. 27 (464 SE2d 7) (1995) (discussing parameters of right of intervention).

[19] OCGA § 34-9-11.1 (c).

[20] *Brown*, supra at 28.

[21] Supra.

[22] Id. at 900.

[23] Id. at 901.

noted in dicta, however, that DOAS's subrogation lien remained viable and that the result would be different "[h]ad Rowland settled with Young despite having knowledge of the workers' compensation claim and DOAS's right of subrogation."[24]

In this case, Murray did not settle his claims without Anthem's knowledge, thereby extinguishing Anthem's cause of action against GMH. Rather, Anthem chose not to assert its claim against GMH in the manner prescribed by the statute — by intervening in the tort action to protect its rights. Accordingly, *Rowland* does not apply here. Moreover, while GMH may have known before it paid Murray that Anthem asserted a subrogation lien on Murray's recovery, we cannot conclude that GMH knew that Anthem's asserted lien was, in fact, viable and enforceable. As discussed in Division 1, the viability of that lien remains undetermined. It would be unjust to charge GMH with knowledge "of the existence of a potential claim so uncertain under the law."[25]

As GMH owed no duty to Anthem, the trial court correctly granted summary judgment in favor of GMH.

*Judgment affirmed in part, reversed in part, and remanded. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 13, 2000 — 

*Young, Thagard, Hoffman, Scott & Smith, Daniel C. Hoffman,* for appellant.

*Gibson & Spivey, Douglas L. Gibson, Hawkins & Parnell, Blanche R. Miller, Swift, Currie, McGhee & Hiers, Joan P. Shaker, Kopp & Conner, Neal L. Conner, Jr.,* for appellees.