## A02A1373. CANAL INSURANCE COMPANY v. LIBERTY MUTUAL INSURANCE COMPANY.
### (570 SE2d 60)

ELDRIDGE, Judge.

This is an appeal from cross-motions for summary judgment in a workers' compensation subrogation suit brought by Canal Insurance Company c/o O'Steen Adjusting Services, the workers' compensation insurer, who did not intervene in the employee's tort suit against Liberty Mutual Insurance Company, the third-party tortfeasor's insurer, although it was on notice. Liberty Mutual settled the tort suit with the injured employee for a recovery for pain and suffering damages only, and there were substantial economic damages for lost wages and medical expenses remaining uncompensated in excess of the benefits paid by Canal. The trial court denied Canal's motion and granted Liberty Mutual's motion, because Canal's derivative claim was lost when the employee's suit was dismissed with prejudice. Absent intervention in such tort suit to protect its subrogation right, Canal could never carry its burden to prove that the employee had been fully compensated for his injuries and damages, thus barring any right of subrogation. We affirm.

On July 2, 1997, Robert E. Wilson, an employee of Thomas Trucking Company, sustained personal injuries arising out of the scope of his employment through the negligence of Harry's Farmers Market, Inc. and sued Harry's. Liberty Mutual insured Harry's and entered a defense for its insured to the suit. Canal paid Wilson's medical expenses and compensation benefits for the injuries arising from the occurrence.

Although Canal was on notice of the third-party tort action by the employee, Canal chose not to intervene in Wilson's tort suit. Liberty Mutual was on notice that Canal had a workers' compensation subrogation lien for the economic benefits that Canal had paid. Prior to trial and entry of judgment, Liberty Mutual settled the suit with Wilson for only his noneconomic damages, i.e., his pain and suffering, for $100,000, and Wilson dismissed the suit with prejudice. At the time of settlement, Wilson had special damages of $133,000 of which $40,000 were unreimbursed lost wages. Canal had paid $27,186.16 in medical expenses and $52,650 in disability benefits. Liberty Mutual was of the opinion that the settlement with Wilson was less than full compensation for his injuries and damages, both economic and noneconomic from evidence in the suit.

Upon learning of Wilson's settlement, Canal sued Liberty Mutual on the theory that Liberty Mutual failed to honor Canal's workers' compensation subrogation lien by settling the case with Wilson, although no one had made any agreement to protect Canal's subrogation lien.

1. Canal contends that the trial court erred in holding a workers' compensation insurance carrier must intervene in a claimant's action to protect and enforce its subrogation lien. We do not agree.

The General Assembly through OCGA § 34-9-11.1 creates a statutory subrogation lien in derogation of common law in the employer or workers' compensation insurer against any third-party tortfeasor, causing the employee's injury or recovery. The Act reads in pertinent part:

> (b) In the event an employee has a right of action against such other person as contemplated in subsection (a) of this Code section and the employer's liability under this chapter has been fully or partially paid, then the employer or such employer's insurer shall have a subrogation lien, not to exceed the actual amount of compensation paid pursuant to this chapter, against such recovery. The employer or insurer may intervene in any action to protect and enforce such lien. However, the employer's or insurer's recovery under this Code section shall be limited to the recovery of the amount of disability benefits, . . . and medical expenses paid under this chapter and shall only be recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.

"[A]ny claim by [the] employer or its insurer asserting subrogation rights against a third-party tortfeasor to the extent of workers' compensation payments made to [the employee] arises solely by operation of statute." *Ga. Star Plumbing v. Bowen*, 225 Ga. App. 379, 381-382 (484 SE2d 26) (1997); see also *K-Mart Apparel Corp. v. Temples*, 260 Ga. 871, 873 (1) (401 SE2d 5) (1991); *Maryland Cas. Ins. Co. v. Glomski*, 210 Ga. App. 759, 761 (437 SE2d 616) (1993). If the right to a subrogated lien or apportionment of attorney fees does not arise under benefits paid under Georgia law, then no subrogation lien arises, because any such rights must come from within the language of the statute. *Johnson v. Comcar Indus.*, 252 Ga. App. 625, 627 (556 SE2d 148) (2001); *Simpson v. Southwire Co.*, 249 Ga. App. 406, 409 (1) (548 SE2d 660) (2001). Prior to the 1995 amendment, this section

applied exclusively to disability benefits and medical expenses and excluded death benefits, because such death benefits were not specifically included under the Act. *Wausau Ins. Co. v. McLeroy*, 266 Ga. 794, 796 (2) (471 SE2d 504) (1996). Thus, the Act must expressly grant a right to a subrogation lien and provide a method to enforce such right for the courts to recognize and enforce such right.

The Act only provides that the employer, insurer, or employee under OCGA §§ 9-11-24 and 34-9-11.1 have the right to intervene in a personal injury action brought by the employee to protect its subrogation rights or by the employer/insurer. *Dept. of Admin. Svcs. v. Brown*, 219 Ga. App. 27, 28 (464 SE2d 7) (1995). Failure to allow intervention to protect the subrogation lien or the employee's rights constitutes an abuse of discretion by the trial court. Id. at 28; see also *Payne v. Dundee Mills*, 235 Ga. App. 514, 515 (1) (510 SE2d 67) (1998). If the employee does not sue within one year, then the employer or insurer may sue in its own name or the name of the employee with the right of intervention now in the employee. OCGA § 34-9-11.1. However, if the employer has not sued in the name of either the employee or its own name under the Act or intervened in the employee's suit, then the employer or insurer lacks standing to appeal the dismissal of the action, because the employer or insurer was not a party to the suit. *Astin v. Callahan*, 222 Ga. App. 226, 228 (2) (474 SE2d 81) (1996). Such are the exclusive procedures to protect and perfect the subrogation lien.

> The right of an employer or insurer to seek subrogation under OCGA § 34-9-11.1 is not absolute. Because that right "arises solely by operation of statute," the insurer must follow the specific procedures set forth in the statute in order to protect its subrogation lien. The statute provides that an insurer "may intervene" in a lawsuit by the injured employee against a third-party tort-feasor to "protect and enforce" its subrogation lien against the tort recovery. If the injured employee does not sue the third-party tort-feasor within one year of the date of injury, then the insurer may "assert the employee's cause of action in tort, either in its own name or in the name of the employee." In either case, the insurer's right of action against a third party is derivative of the injured employee's claim; the insurer has no right to pursue its own independent action against the third party.

(Punctuation and footnotes omitted.) *Anthem Cas. Ins. Co. v. Murray*, 246 Ga. App. 778, 782 (2) (542 SE2d 171) (2000). In this case, Canal did neither; it only gave notice and waited without any agreement to

protect its subrogation lien from anyone. See *Astin v. Callahan*, supra at 228-229.

Where the employee settled a lawsuit and released the third-party tortfeasor prior to receiving any workers' compensation payments, which gave rise to a subrogation lien, the settlement and release extinguished any and all future subrogation rights later asserted by the employer or its insurer; notice of a pending workers' compensation claim by the tortfeasor did not give rise to a possible future subrogation lien where no payments had been made at the time of settlement. *Ga. Star Plumbing v. Bowen*, supra at 381-382. However, where the employee received benefits but settled his personal injury claim against a tortfeasor without filing suit and where the tortfeasor had no knowledge of the workers' compensation subrogation lien, the employer or insurer had no claim against the tortfeasor by way of a subrogation action, but the subrogation lien would attach to the recovery by settlement. *Rowland v. Dept. of Admin. Svcs.*, 219 Ga. App. 899 (466 SE2d 923) (1996); accord *Ga. Star Plumbing v. Bowen*, supra at 382-383.

However, in *Rowland v. Dept. of Admin. Svcs.*, supra at 902, language not necessary to the holding in such case said: "[a]s a matter of general law, where the wrongdoer settles with the insured without the consent of the insurer with the knowledge of the insurer's payment and right of subrogation, such right is not defeated by the settlement." (Punctuation and emphasis omitted.) See *Anthem Cas. Ins. Co. v. Murray*, supra at 782-783. Such general law came, not from workers' compensation law, but from insurance policy subrogation applicable to collision coverage and relied upon *Vigilant Ins. Co. v. Bowman*, 128 Ga. App. 872, 874 (198 SE2d 346) (1973), which held in part: "[h]istorically, and as a matter of general law, the insurer's right to subrogation is an equitable one and does not rest on any relation of contract or of privity between the insurer and the wrongdoer. The right is derived from the rights which the insured has and is limited to those rights." Such general law has no application to this statutory workers' compensation subrogation lien, because OCGA § 34-9-11.1 is purely a statutory right of subrogation and requires that the subrogation lien be enforced against the third-party tortfeasor either by intervention in the employee's suit, by suit against the tortfeasor within the statutory terms, or by a claim against the recovery; but the subrogation lien is lost against the third party if there is no suit or intervention in the employee's suit, and the subrogation lien may only be asserted against the recovery in the hands of the employee after he has been made whole. *Anthem Cas. Ins. Co. v. Murray*, supra at 782-783. Canal mistakenly relied upon this dicta. Such language in *Rowland v. Dept. of Admin. Svcs.*, supra at 902, or other decisions,

as it may apply to OCGA § 34-9-11.1, is specifically disapproved. See *Anthem Cas. Ins. Co. v. Murray*, supra at 782-783.

Further, relied upon by Canal, in *Prudential Commercial Ins. Co. v. Michigan Mut. Ins. Co.*, 261 Ga. 637 (410 SE2d 30) (1991), the Supreme Court of Georgia answered certified questions pertaining to subrogation of personal injury protection under the now repealed no-fault law, OCGA § 33-34-5 (a) (1), which had nothing to do with the interpretation of OCGA § 34-9-11.1 other than it was also a statutory subrogation right in the insurer. As a legal matter, since the statutes and statutory purposes were dissimilar, such case is distinguished from the case before us, because under OCGA § 34-9-11.1, the General Assembly was concerned that the employee be fully compensated, while under no-fault, the General Assembly wanted to hold down insurance costs to reduce premiums by allowing recovery against the tortfeasor. Id. at 640. Likewise, *Southern Gen. Ins. Co. v. Cotton States Mut. Ins. Co.*, 193 Ga. App. 240, 241 (387 SE2d 435) (1989); *Poole Truck Line v. State Farm &c. Ins. Co.*, 163 Ga. App. 755 (294 SE2d 570) (1982); and *Martin v. Commercial Union Ins. Co.*, 935 F2d 235 (11th Cir. 1991), argued by Canal, deal with no-fault insurance under a different statutory scheme.

The General Assembly required that the subrogation lien be asserted, perfected, and satisfied in whole or in part in the trial court, because the trial court had to determine if the employee had been made whole. Even when the lien is asserted against the recovery, this must be done in the trial court. The trial court and not a jury must determine if the employee has been fully and completely compensated by workers' compensation benefits and by a recovery from a third-party tortfeasor. *Liberty Mut. Ins. Co. v. Johnson*, 244 Ga. App. 338, 340 (2) (535 SE2d 511) (2000); accord *Anthem Cas. Ins. Co. v. Murray*, supra at 780-781 (1). Since subrogation for workers' compensation benefits was unknown at common law, then neither party has a right to a jury determination of whether or not the subrogation lien attaches or full and complete compensation for the employee was obtained. *Liberty Mut. Ins. Co. v. Johnson*, supra at 340. Where the employer or insurer has intervened, the bifurcation of the tort action trial and determination of tort damages first is appropriate to avoid revealing to the jury that the employee has already recovered a collateral source, the workers' compensation benefits. *Hammond v. Lee*, 244 Ga. App. 865, 868-869 (4) (536 SE2d 231) (2000). In the first portion of the bifurcated trial, a special verdict form rather than a general verdict should be used to determine what recovery is returned for medical expenses, lost wages, and pain and suffering, because the subrogation cannot be satisfied out of a noneconomic recovery. *North Bros. Co. v. Thomas*, 236 Ga. App. 839, 840-841 (513 SE2d 251) (1999); *Bartow County Bd. of Ed. v. Ray*, 229

Ga. App. 333, 335 (494 SE2d 29) (1997); *Dept. of Admin. Svcs. v. Brown*, supra at 28. Where there is an economic recovery, the trial court must determine if the benefits paid exceed the recovery or if there exist economic damages unrecovered.

> Without such a special verdict form, [trial and] appellate courts could not determine what portions of the award the jury applied toward economic and noneconomic losses, and, as a result, it would be impossible to determine whether [an employee] had been fully compensated for his losses. The outcome in many such situations would be that a workers' compensation subrogation lien could not be enforced. It is the responsibility of the workers' compensation provider to protect its interest by intervention and special verdict requests.

(Citation omitted.) *North Bros. Co. v. Thomas*, supra at 841. However, either by the agreement of the parties or by waiver in failing to timely object, the trial court can submit the issue of full and complete compensation to the jury to render an advisory finding of fact. See generally *Hammond v. Lee*, supra; *Homebuilders Assn. of Ga. v. Morris*, 238 Ga. App. 194 (518 SE2d 194) (1999). But, under the statute, the legal duty to make the determination that the employee has been made whole still remains with the trial court, even if it uses a jury to advise it in reaching such determination. *Liberty Mut. Ins. Co. v. Johnson*, supra at 340; *Anthem Cas. Ins. Co. v. Murray*, supra at 780-781.

2. Canal contends that the trial court erred in interpreting the term "fully and completely compensated" in OCGA § 34-9-11.1 (b). We do not agree.

The General Assembly, in creating for the first time the right of subrogation of workers' compensation benefits in the employer or its insurer of the employee's tort action against a third-party tortfeasor, imposed conditions precedent to such subrogation right:

> the employer's or insurer's recovery under this Code section shall be limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter and shall only be recoverable *if the injured employee has been fully and completely compensated*, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.

(Emphasis supplied.) OCGA § 34-9-11.1 (b). "[A] primary legislative

concern was that the injured employee first be made whole." *Bartow County Bd. of Ed. v. Ray*, supra at 335; accord *Powell v. Daniels Constr. & Demolition*, 232 Ga. App. 422, 424 (3) (501 SE2d 578) (1998). Full and complete damages as compensation must be determined within tort damage law; however, this means "fully and completely compensated for his losses within the meaning of OCGA § 34-9-11.1 (b), not within the meaning of general principles of tort law [as to defenses]." (Emphasis omitted.) *Homebuilders Assn. of Ga. v. Morris*, supra at 196. "This construction of OCGA § 34-9-11.1 (b) is buttressed by the legislative concern evidenced in the statute that the injured employee be made whole — regardless of any fault on his part — before the employer is allowed to recover the amount of workers' compensation benefits paid out." Id.

In an analogous area of interpretation of subrogation rights and the meaning of full and complete compensation, the Supreme Court of Georgia has held in regard to the insurer's subrogation rights under an insurance policy that such rights as a matter of public policy are subordinate to the insured's paramount right to complete compensation for his losses prior to any subrogation.

> [W]e conclude that Georgia public policy strongly supports the rule that an insurer may not obtain reimbursement unless and until its insured has been completely compensated for his losses. Indeed, Georgia public policy encourages insurance coverage which assures no less than full compensation to the insured, while at the same time preventing the insured from recovering more than is necessary to make him whole. Furthermore, Georgia law has long recognized that subrogation, a doctrine originating in equity, is founded upon the dictates of refined justice. Its basis is the doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice. These considerations of public policy and equitable principles of subrogation are so strong that some jurisdictions declare that any insurance policy provision which modifies the complete compensation rule is unenforceable and void.

(Citations and punctuation omitted.) *Duncan v. Integon Gen. Ins. Corp.*, 267 Ga. 646, 647-648 (482 SE2d 325) (1997) (reimbursement of medical coverage under insurance policy); accord *Simpson v. Southwire Co.*, supra at 408 (an OCGA § 34-9-11.1 case).

The trial court alone must determine if the employee has been fully and completely compensated; neither party has a right to a jury determination of whether the injured employee has been fully and

completely compensated under subsection (b). *Liberty Mut. Ins. Co. v. Johnson,* supra at 340 (2); see also *Anthem Cas. Ins. Co. v. Murray,* supra at 780-781 (1). Thus, unless clearly erroneous, this Court must defer to the trial court's determination of this factual determination. *Hartford Ins. Co. v. Fed. Express Corp.,* 253 Ga. App. 520, 522 (559 SE2d 530) (2002). Therefore, the trial court has the authority to reduce an employee's general award including personal injuries to cover the subrogated lien where the trial court has determined that the employee has first been made whole. *Powell v. Daniels Constr. & Demolition,* supra at 423 (3). However, the trial court may not consider the affirmative defenses of contributory/comparative negligence/assumption of risk in determining whether or not the employee had been fully and completely compensated for his injuries, because the employee's total economic and noneconomic losses make up the full and complete compensation unreduced by such defenses under the Act. *Homebuilders Assn. of Ga. v. Morris,* supra at 196. In this case, all of the evidence shows that the recovery was restricted to noneconomic damages and that unrecovered economic damages exceeded the subrogation lien.

Neither the employer nor the insurer can assert a subrogation lien against noneconomic damages, i.e., pain and suffering, where, under the Act, no noneconomic benefits were paid. *Hammond v. Lee,* supra at 868; *North Bros. Co. v. Thomas,* supra at 841. Where prior weekly lost wages exceeded the amount paid weekly for disability, the insurer was not entitled to a subrogation lien, because the employee had not been fully compensated by the recovery. *Hammond v. Lee,* supra at 867 (1).

Where the special verdict specified a certain amount for medical expenses and another sum certain for pain and suffering and there was no evidence that the employee's medical expenses exceeded such sum, the employer could enforce the subrogation lien against the medical award up to the limit of its medical subrogation lien but could not enforce the lien against the noneconomic pain and suffering award. *North Bros. Co. v. Thomas,* supra at 841-842. Thus, where the recovery for medical expenses was more than sufficient to fully and completely compensate for all medical expenses incurred as a result of the injury, i.e., medical expenses paid by the insurer, by the employee, and for unpaid expenses, the insurer was entitled to a subrogation lien against the medical recovery up to the total of its lien. *Hammond v. Lee,* supra at 868 (2).

Here, in this case, Canal did not intervene or otherwise seek to protect in court its derivative subrogation right, and there is no evidence that Wilson's recovery by settlement with the tortfeasor consisted of anything other than noneconomic damages, to which Canal could not assert a subrogation lien. Unlike *Anthem Cas. Ins. Co. v.*

*Murray*, supra at 780-781, where the evidence allowed the trial court to determine full compensation from the employee's own briefs and suits, Canal's inaction made it impossible for Canal to carry the burden of proof so that the trial court could determine if Wilson had been fully and completely compensated for all his economic and noneconomic losses. Therefore, Canal, by its inaction, made it impossible to prove that Wilson had been fully and completely compensated. *North Bros. Co. v. Thomas*, supra at 841. Thus, summary judgment against Canal and for Liberty Mutual was appropriate. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Judgment affirmed. Blackburn, C. J., Pope, P. J., Andrews, P. J., Johnson, P. J., Smith, P. J., Ruffin, Barnes, Miller, Ellington, Phipps and Mikell, JJ., concur.*

DECIDED AUGUST 1, 2002.

*Sartain, McKay & Crowell, Frank R. McKay*, for appellant.
*Finch, McCranie, Brown, Hendrix & Sullivan, Richard W. Hendrix, Michael A. Sullivan*, for appellee.