**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2015**

# In the Court of Appeals of Georgia

A15A1209. SCHECTER v. AUTO-OWNERS INSURANCE
  COMPANY.

DILLARD, Judge.

Micah Schecter appeals the trial court's denial of his motion for summary judgment in Auto-Owners Insurance Company's ("Auto-Owners") suit to recover workers' compensation benefits that it paid to injured worker David Larios. On appeal, as he argued below, Schecter contends that (1) Auto-Owners's failure to intervene in Larios's action against Schecter forfeited the company's right to enforce a subrogation lien and (2) the terms of Schecter's settlement agreement with Larios bar Auto-Owners's suit. Because we agree that Auto-Owners's failure to intervene in Larios's action bars its current lawsuit against Schecter, we reverse.

Viewed in the light most favorable to Auto-Owners (*i.e.*, the nonmovant),[1] the record reflects that while acting in the scope of his employment, Larios was injured in an automobile accident with Schecter. Under a workers' compensation insurance policy that Larios's employer maintained, Auto-Owners paid benefits to Larios for the injuries he sustained in the collision.

On February 4, 2013, Larios filed suit against Schecter to recover damages for pain and suffering. Larios's complaint explicitly stated that he did not (1) seek to recover workers' compensation/subrogation damages, or (2) object to the workers' compensation carrier's right to join in the action to recover such damages. Nevertheless, Larios's prayer for relief sought recovery for "special damages for past and future medical expenses and loss of income in the past and future in such an amount as shall be proven at trial[.]"

Thereafter, on March 20, 2013, Auto-Owners filed a motion to intervene in Larios's action and submitted a proposed order, providing, *inter alia*, that Auto-

---

[1] *See, e.g., Blake v. KES, Inc.*, 329 Ga. App. 742, 742 (766 SE2d 138) (2014) ("On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (punctuation omitted)).

Owners not be named in the style of the case; that Larios be required to "introduce evidence of all special damages at the trial of this action"; that the jury return a special verdict separating the various damages; and that there be a bifurcated trial for subrogation recovery.

Although a signed order granting Auto-Owners's motion to intervene does not appear in the appellate record, it is undisputed that Auto-Owners was permitted to intervene in Larios's action. Nevertheless, Larios later moved to set aside and modify the order permitting Auto-Owners to intervene, objecting to "the request for bifurcated trials and [Larios] to sue for intervenor's special[ ] [damages]" because Larios did "not intend to prove or offer specials in evidence at the trial and does not have any one [sic] to testify to same or the amounts."[2] In response, Auto-

---

[2] *But see Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 256 Ga. App. 866, 870 (1) (570 SE2d 60) (2002) ("Where the employer or insurer has intervened, the bifurcation of the tort action trial and determination of tort damages first is appropriate to avoid revealing to the jury that the employee has already recovered a collateral source, the workers' compensation benefits. In the first portion of the bifurcated trial, a special verdict form rather than a general verdict should be used to determine what recovery is returned for medical expenses, lost wages, and pain and suffering, because the subrogation cannot be satisfied out of a noneconomic recovery." (citations omitted)); *Hammond v. Lee*, 244 Ga. App. 865, 866 (536 SE2d 231) (2000) (noting that employee's suit against third party, in which insurance company intervened "was tried before a jury and was bifurcated into two phases," and that in the first phase, the employee's claim against the third party "was tried before the jury under a ruling by the trial court to omit any reference to the fact that [the employee] had been

3

Owners voluntarily dismissed its request to intervene. In doing so, Auto-Owners asserted that its withdrawal was "in no way a waiver or abandonment or should otherwise prejudice of the [sic] subrogation rights" of the company.

On August 13, 2013, while Larios's lawsuit against Schecter remained pending, Auto-Owners filed suit against Schecter seeking to recover $22,535.98 for indemnity benefits and $122,907.04 for medical bills related to Schecter's automobile accident with insured-employee Larios. Schecter answered, asserting in defense that Auto-Owners's suit was barred by its failure to comply with OCGA § 34-9-11.1. On November 22, 2013, Schecter filed a motion to dismiss on those same grounds, but the trial court denied his motion and likewise denied a motion seeking a certificate of immediate review.

Almost one year later, on October 3, 2014, Schecter filed a motion for summary judgment against Auto-Owners, making the same argument from his earlier motion to dismiss and also asserting that he had settled the lawsuit brought by Larios, and that the settlement agreement with Larios barred a separate lawsuit by Auto-Owners.

_____

reimbursed for lost wages and medical expenses by workers' compensation coverage" and utilized a special verdict form; and in the second phase, the issue was whether the insurance company "was entitled to a subrogation lien pursuant to OCGA § 34-9-11.1 (b) against the amounts recovered by [the employee] in phase one").

4

Exhibits attached to Schecter's motion show that Larios dismissed his action with prejudice on November 25, 2013, asserting that a settlement had been reached between the parties, and that on December 11, 2013, Larios signed an agreement to settle the claims that were made in his lawsuit for $600,000.[3] The agreement provided that it satisfied "any and all claims[ ] which were asserted or could have been asserted by [Larios] against Micah Schecter and/or Progressive Northern Insurance Company" in Larios's lawsuit. The agreement further provided that it was a

> full settlement, accord and satisfaction of any and all claims for negligence, abusive litigation, bad faith, fraud, breach of duty, penalties, attorney's fees or punitive damages, as well as for any and all claims for injuries, damages, costs, interest, expenses and compensation of every kind sustained or which may be hereafter accrued or sustained by [Larios] . . . .

The trial court denied Schecter's motion for summary judgment, but issued a certificate of immediate review, after which this Court granted Schecter's application for interlocutory appeal. This appeal follows.

---

[3] In contrast with these dates, in the order denying Schecter's motion to dismiss, the trial court said that Larios's action was dismissed on December 31, 2013.

5

Once again, on appeal, Schecter makes the same contentions before this Court that he made before the trial court, namely that (1) Auto-Owners's failure to intervene in Larios's action against Schecter forfeited the company's right to enforce a subrogation lien and (2) that the terms of Schecter's settlement agreement with Larios bar Auto-Owners's lawsuit against him. We agree with Schecter that Auto-Owners's failure to intervene in Larios's action bars its current lawsuit and, thus, the trial court erred in denying summary judgment to Schecter on this ground.

At the outset, we note that OCGA § 34-9-11.1 provides, in relevant part, that when a third-party causes an employee's injury or death, and the liability of the employer has been fully or partially paid, the employer or the employer's insurer "shall have a subrogation lien, not to exceed the actual amount of compensation paid pursuant to this chapter, against such recovery."[4] And to protect this interest, the employer or the employer's insurer "may intervene in any action to protect and enforce such lien."[5] But the recovery of the employer or employer's insurer is

> limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter and shall only be

---

[4] OCGA § 34-9-11.1 (b).

[5] *Id.*

recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.[6]

If the injured employee fails to bring suit against the third party within one year, OCGA § 34-9-11.1 (c) permits the employer or such employer's insurer to "assert the employee's cause of action in tort, either in its own name or in the name of the employee." The employee must be given notice if the employer or employer's insurer files suit, and the employee has the right to intervene.[7] Additionally, if the employee files suit against the third party more than one year after the date of the injury, the employee must give notice to the employer or its insurer, and the employer or its insurer may intervene.[8] But in any event, "if the employer or insurer recovers more than the extent of its lien, then the amount in excess thereof shall be paid over to the employee."[9]

---

[6] *Id.*

[7] OCGA § 34-9-11.1 (c).

[8] *Id.*

[9] *Id.*

7

As we have previously noted, the workers' compensation statute is in derogation of the common law and, as a result, it must be strictly construed.[10] Moreover, any claim by an employer or its insurer "asserting subrogation rights against a third-party tortfeasor to the extent of workers' compensation payments made to the employee arises solely by operation of statute."[11] Thus, an employer or employer's insurer's right to seek subrogation is not absolute.[12] And under the express terms of OCGA § 34-9-11.1, Auto-Owners had two options: (1) intervene in

---

[10] *See Canal Ins. Co.*, 256 Ga. App. at 867 (1) ("The General Assembly through OCGA § 34-9-11.1 creates a statutory subrogation lien in derogation of common law in the employer or workers' compensation insurer against any third-party tortfeasor, causing the employee's injury or recovery."); *Coker v. Deep S. Surplus of Ga., Inc.*, 258 Ga. App. 755, 756 (574 SE2d 815) (2002) ("Because the Workers' Compensation Act is in derogation of common law, its provisions must be strictly construed.").

[11] *Canal Ins. Co.*, 256 Ga. App. at 867 (1) (punctuation omitted); *accord Ga. Star Plumbing v. Bowen*, 225 Ga. App. 379, 381-82 (484 SE2d 26) (1997); *see also K-Mart Apparel Corp. v. Temples*, 260 Ga. 871, 873 (1) (401 SE2d 5) (1991) ("[A]ny subrogation claim which an insurer under the Georgia Workers' Compensation Act may have against a third-party tortfeasor who has caused the death or disability of an employee arises solely by operation of statute." (punctuation omitted)).

[12] *Anthem Cas. Ins. Co. v. Murray*, 246 Ga. App. 778, 782 (2) (542 SE2d 171) (2000) ("The right of an employer or insurer to seek subrogation under OCGA § 34-9-11.1 is not absolute."); *see also N. Bros. Co. v. Thomas*, 236 Ga. App. 839, 839-40 (513 SE2d 251) (1999) ("OCGA § 34-9-11.1, which provides a limited right of subrogation to workers' compensation providers, was enacted in 1995. No subrogation thereunder could occur unless the injured employee had been fully and completely compensated.").

8

Larios's suit against Schecter, or (2) file suit against Schecter itself *if Larios had not filed suit within one year of the injury*.[13] With either option, Auto-Owners's right of action against Schecter was derivative of Larios's claims,[14] and under the facts of this

___

[13] *See* OCGA § 34-9-11.1 (b)-(c); *see also Canal Ins. Co.*, 256 Ga. App. at 869 (1) ("OCGA § 34-9-11.1 is purely a statutory right of subrogation and requires that the subrogation lien be enforced against the third-party tortfeasor either by intervention in the employee's suit, by suit against the tortfeasor within the statutory terms, or by a claim against the recovery; but the subrogation lien is lost against the third party if there is no suit or intervention in the employee's suit, and the subrogation lien may only be asserted against the recovery in the hands of the employee after he has been made whole.").

[14] *See Anthem Ins. Co.*, 246 Ga. App. at 782 (2) ("In either case, the insurer's right of action against a third party is derivative of the injured employee's claim; the insurer has no right to pursue its own independent action against the third party." (punctuation omitted)); *accord Canal Ins. Co.*, 256 Ga. App. at 868 (1). *Cf. Janet Parker, Inc. v. Floyd*, 269 Ga. App. 59, 59-62 (603 SE2d 485) (2004) (holding that, notwithstanding fact that employer brought suit in its own name pursuant to OCGA § 34-9-11.1 (c) only for " the liquidated amount that had been paid to [the employee] in workers' compensation benefits" after employee failed to file his own tort action within one year of injury, employee was not precluded from bringing his own separate action to recover for personal injuries and loss of consortium, but noting that employee received notice of employer's suit only after filing his own action; suggesting that court in which employer's action was pending had wrongly denied the employee's motion to intervene (to which motion employer had objected); noting that if employee had not moved to intervene in other action, employee's separate action would have been barred by laches; and holding that third-party tortfeasor could move for mandatory joinder of the employer in the employee's action).

case, Auto-Owners had no right to pursue its own independent action against Schecter when Larios was already pursuing an action.[15]

A plain reading of the statute evinces that nothing in OCGA § 34-9-11.1 permitted Auto-Owners to file a separate suit against Schecter when a suit by Larios remained pending.[16] Instead, Auto-Owners should have maintained its intervention in Larios's suit if it wished to enforce and protect its interest in the subrogation lien.[17]

---

[15] *Cf. Anthem Cas. Ins. Co.*, 246 Ga. App. at 782 (2) ("[The insurer] did not intervene in [the employee's] lawsuit against [the third-party tortfeasor]. Instead, [the insurer] voluntarily relinquished its right to participate in the action to protect and enforce its subrogation lien. Nothing in OCGA § 34-9-11.1 gives [the insurer] the right to now file an independent action against [the third-party tortfeasor] for failing to pay the tort judgment to [the insurer], rather than to [the employee], the plaintiff.").

[16] OCGA § 34-9-11.1 (a)-(e); *see Canal Ins. Co.*, 256 Ga. App. at 866 (holding that workers' compensation insurer was required to intervene in injured employee's tort action to protect and enforce its subrogation lien and could not file a separate action). *Cf. Ga. Elect. Mem. Corp. v. Hi-Ranger, Inc.*, 275 Ga. 197, 197 (563 SE2d 841) (2002) (holding that employee's limited settlement of claims against third-party did not extinguish claims of the insurer when employee and insurer had jointly filed suit against third party and settlement agreement provided that insurer's claims would remain pending).

[17] *See* OCGA § 34-9-11.1 (b) (providing that employer or employer's insurer "may intervene in any action to protect and enforce" a subrogation lien); *see also* OCGA § 9-11-24 (a) (1)-(2) ("Upon timely application anyone shall be permitted to intervene in an action[ ] . . . [w]hen a statute confers an unconditional right to intervene; or . . . [w]hen the applicant claims an interest relating to the property or transaction which is the subject matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to

10

Auto-Owners nevertheless argues that because Larios did not seek to recover economic damages in his action against Schecter, Larios's choice of recovery precluded Auto-Owners from intervening under the statute.[18] But OCGA § 34-9-11.1

protect that interest, unless the applicant's interest is adequately represented by existing parties."); *Dep't of Admin. Svcs. v. Brown*, 219 Ga. App. 27, 28 (464 SE2d 7) (1995) ("[The employer] may intervene as of right under OCGA § 9-11-24 (a) (2). [The employer] possesses an interest in [the employee's] recovery due to its subrogation lien on the workers' compensation funds it paid [the employee]. As a practical matter, without intervention, [the employer's] interest could be impaired should [the employee] settle and disperse her award without [the employer's] knowledge. Nor does it appear that [the employer's] interests are adequately represented by the existing parties, inasmuch as [the employee] argued below that [the employer] would not be entitled to any recovery if she was not first fully and completely compensated. Intervention is also warranted because under the instant circumstances [the employer] has no right to pursue its own independent action against the third parties." (citation omitted)). *Cf. Kroger v. Taylor*, 320 Ga. App. 298, 298 (739 SE2d 767) (2013) ("[When] intervention appears before final judgment, where the rights of the intervening parties have not been protected, and where the denial of intervention would dispose of the intervening parties' cause of action, intervention should be allowed and the failure to do so amounts to an abuse of discretion." (punctuation omitted)); *Payne v. Dundee Mills, Inc.*, 235 Ga. App. 514, 515 (1) (510 SE2d 67) (1998) (noting that denial of employee's motion to intervene would bar his independent tort claim).

[18] We note, of course, that "[a] party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order." OCGA § 9-11-15 (a). And an amendment to a complaint relates back to the original filing date if "it asks for additional damages which arise out of the same transaction or occurrence that is the subject of the initial complaint." *P.F. Moon & Co., Inc. v. Payne*, 256 Ga. App. 191, 193 (1) (568 SE2d 113) (2002); *see also* OCGA § 9-11-15 (c) ("Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

11

permits an employer or employer's insurer to intervene in "any action,"[19] and requires only that the employee assert "his or her cause of action in tort"[20] before an employer or employer's insurer may intervene to protect and enforce its lien.

As we have previously held in the context of workers' compensation subrogation, intervention under OCGA § 34-9-11.1 "gives the intervenors rights against the defendants and the plaintiffs which are analogous to cross-claims."[21]

original pleading, the amendment relates back to the date of the original pleading.").

[19] OCGA § 34-9-11.1 (b) ("The employer or insurer may intervene in *any action* to protect and enforce such lien." (emphasis supplied)); *see also* OCGA § 34-9-11.1 (a) ("When the injury or death for which compensation is payable under this chapter is caused under circumstances creating a legal liability against some person other than the employer, the injured employee or those to whom such employee's right of action survives at law may pursue the remedy by proper action in a court of competent jurisdiction against such other persons, except as precluded by Code Section 34-9-11 or otherwise."); *Janet Parker, Inc.*, 269 Ga. App. at 59 ("OCGA § 34-9-11.1 (a) provides that even though an employee may recover workers' compensation benefits, he may still have a right of action against persons, other than the employer, arising out of the circumstances under which the employee was injured." (punctuation omitted)).

[20] OCGA § 34-9-11.1 (c) ("If after one year from the date of injury the employee asserts his or her *cause of action in tort*, then the employee shall immediately notify the employer or its insurer of his or her assertion of such cause of action, and the employer or its insurer shall have a right to intervene." (emphasis supplied)).

[21] *Int'l Maint. Corp. v. Inland Paper Bd. & Packaging Inc.*, 256 Ga. App. 752, 755 (1) (569 SE2d 865) (2002).

12

Furthermore, we have also suggested that "should an intervenor seek to litigate issues different from those already pending between the parties, *to claim additional damages*, or to raise additional defenses, . . . the intervenor's ability to raise these matters would be controlled by OCGA §§ 9-11-21 and 9-11-15 (c)."[22] And finally, although an intervenor's choice of pleadings or argument "may on occasion conflict

---

[22] *AC Corp. v. Myree*, 221 Ga. App. 513, 515 (2) (471 SE2d 922) (1996) (emphasis supplied); *see supra* note 18. *Cf. P.F. Moon & Co., Inc.*, 256 Ga. App. at 193 (1) ("The issue remains . . . as to whether the [injured employee and his wife], as intervenors, can stand in [the employer's] shoes for purposes of amending the relief sought. Intervention is intended to allow the intervenor to protect its share of the recovery from another's litigation. But due to the unique situation presented under OCGA § 34-9-11.1, an employee . . . may be intervening not only to secure his interest in any recovery, but also to protect the proper prosecution of his own cause of action. And here, [the employee] seeks only to add an additional damage claim arising out of the same occurrence upon which [the employer's] complaint was based. Under these circumstances, we find that the claim for pain and suffering is a claim 'arising out of the conduct, transaction, or occurrence' set forth in the original complaint pursuant to OCGA § 9-11-15(c) and may be treated as an amendment by a party plaintiff relating back to the date of the original complaint for statute of limitation purposes." (citations omitted)).

with a plaintiff's choice,"[23] the trial court's "ability to referee such disagreements and conflicts will have to be decided on a case-by-case basis."[24]

We make no pronouncement today as to whether Auto-Owners may pursue recovery from Larios because that question is not before us.[25] We hold only that Auto-Owners's action against Schecter is barred by its failure to comply with OCGA § 34-9-11.1 and, as such, the trial court erred in denying summary judgment to Schecter.

For all of the foregoing reasons, we reverse.

*Judgment reversed. Ellington, P. J., and McFadden, J., concur.*

---

[23] *Int'l Maint. Corp.*, 256 Ga. App. at 754 (1); *see also Austell Healthcare, Inc. v. Scott*, 308 Ga. App. 393, 396 (3) (707 SE2d 599) (2011) (quoting *Int'l Maint. Corp* to note that "[w]e have previously held that an intervenor may file 'whatever briefs, evidence, or other papers it chooses,' and also 'may choose discovery tactics different from those of a plaintiff . . . .'").

[24] *Int'l Maint. Corp.*, 256 Ga. App. at 755 (1).

[25] *Cf. Anthem Cas. Ins. Co.*, 246 Ga. App. at 778 (considering, after judgment was reached in suit between injured employee and third-party tortfeasor and in which insurer agreed with employee that it would have a subrogation lien against any recovery but would not intervene, whether insurer could recover from employee and third-party tortfeasor for reimbursement of the workers' compensation amounts paid to employee when neither party paid any amount of the judgment to insurer).