## A02A0105. INTERNATIONAL MAINTENANCE CORPORATION et al. v. INLAND PAPER BOARD & PACKAGING, INC. et al.
### (569 SE2d 865)

MIKELL, Judge.

This is an appeal of the trial court's dismissal of intervenors International Maintenance Corporation ("IMC") and National Union Fire Insurance Company ("National Union") from the underlying personal injury action. The intervenors also appeal the dismissal of two defendants who settled with the plaintiffs. We affirm in part and reverse in part.

The underlying claim arose on January 24, 1996, when a removable steel staircase and platform fell on Jonathan Massey, severing his spinal cord and rendering him paralyzed from the waist down. It is undisputed that Massey was injured in the course of his employment with IMC. IMC was insured by National Union for workers' compensation claims, subject to a large deductible retained by IMC. The staircase and platform were owned and maintained by Inland Paper Board & Packaging, Inc. ("Inland"), had been designed by Mid-South Engineering Company ("Mid-South"), and had been constructed by Reynolds Industrial Contractors ("Reynolds"). The accident took place at a sawmill owned by Inland, where Massey was engaged in the maintenance and repair of certain equipment. As a result of his accident, Massey received workers' compensation benefits paid by IMC, his employer, and National Union.[1]

Massey and his wife filed suit alleging personal injury and loss of consortium claims against defendants/appellees Inland, Mid-South, and Reynolds on October 21, 1997. Appellants IMC and National Union intervened in the action pursuant to OCGA § 34-9-11.1 (b), seeking to assert a subrogation lien to recover medical and disability benefits they had paid to Mr. Massey. The Masseys subsequently settled with Mid-South and Reynolds and dismissed their

---

[1] There is some dispute as to whether benefits were actually paid by National Union, as there was a $500,000 deductible that IMC would have had to satisfy first. The dispute is not material to this appeal.

claims against those defendants. Over the objections of IMC and National Union, the trial court approved the dismissal of Mid-South and Reynolds.

Inland moved for summary judgment, and IMC and National Union filed a brief urging the court to grant the motion. Because IMC was contractually obligated to indemnify and provide liability coverage to Inland with regard to maintenance work it performed at Inland's facility, it was not in IMC's interest for Mr. and Mrs. Massey to recover damages from Inland. Additionally, a related conflict of interest existed because National Union was both the workers' compensation carrier for IMC and its liability carrier. Because IMC was obligated to indemnify Inland, National Union was in effect also the liability carrier for Inland through Inland's agreement with IMC. On the motion of Mr. and Mrs. Massey, the trial court entered an order dismissing the appellants' intervention and leaving them to prosecute a separate action if they wished to perfect and enforce a subrogation lien. The court expressly stated that IMC and National Union acted wrongfully in joining the effort to defeat the plaintiffs' recovery and that they abused the privileges granted by OCGA § 34-9-11.1. Mr. and Mrs. Massey subsequently settled their claim against Inland and filed a final dismissal with prejudice on June 25, 2001. The present appeal followed.

Mr. and Mrs. Massey have moved to dismiss IMC and National Union's appeal. They contend that because the trial court has not issued a judgment or order regarding the enforceability of the appellants' subrogation lien, IMC and National Union's appeal is premature. OCGA § 5-6-34 (a) (1). Additionally, the Masseys argue that reversal of the trial court's orders would leave IMC and National Union in the same position in which they are at present, because they would still be required to prove that Mr. Massey had been fully and completely compensated in order to establish the validity of their lien.

The procedural posture of the litigation is complex, as is the contractual relationship among the intervenors and the three defendants. We will unravel the complexities only to the extent necessary to address the precise issues raised by the enumerated errors.

1. In their first two enumerated errors, IMC and National Union assert that the trial court erred when it granted the plaintiffs' "motion to strike intervenors' pleadings, dismissal of intervenors as party to this action and forfeiture of liens," by its order dated March 5, 2001. It is true that the plaintiff filed a motion and proposed order so denominated, and the trial court's March order was similarly entitled. But a close reading of the order reveals that it did not grant the motion in full. It struck the pleadings of the intervenors, struck them as parties to the action, and vacated the earlier order allowing the

intervention. The effect of granting those three remedies was to dismiss appellants IMC and National Union from the lawsuit. However, the trial judge did not rule that the intervenors had forfeited their subrogation lien. In fact, the March order expressly stated that the intervenors could enforce "whatever lien they may have" in a separate action.

Was the dismissal proper? We sympathize with the trial court's finding that the actions of the intervenors during the litigation were "blatantly egregious" and "fundamentally wrong." The Masseys' efforts to secure a complete and adequate recovery were hindered by the intervenors because of their conflicts of interest. The trial court attempted a reasonable remedy for the awkward situation resulting from intervention by parties whose interests did not coincide with those of the plaintiffs. However, we do not think that the remedy chosen, dismissal and acknowledgment of a right to bring a separate action, is an acceptable one in view of the legislature's grant to employers and insurance companies of an absolute right to intervene in order to enforce the subrogation lien.

The statute establishing the lien, OCGA § 34-9-11.1, is modified by the general intervention statute, OCGA § 9-11-24, which in subsection (c) requires a motion even when the intervention is a statutory right. A trial court would seem to have no discretion when ruling on such a motion, provided that the employer or insurer has met the statutory prerequisites, e.g., fully or partially paid workers' compensation benefits because of an injury or death "caused under circumstances" which created the alleged legal liability for which the worker is suing. OCGA § 34-9-11.1 (a), (b); *Payne v. Dundee Mills*, 235 Ga. App. 514, 515 (1) (510 SE2d 67) (1998).

Neither the workers' compensation statutes nor the general intervention statute gives specific guidance about what litigation tactics are permissible as an intervenor strives to protect its lien. In the case at bar, IMC and National Union filed briefs supporting a motion for summary judgment by defendant Inland. Case law allows an intervenor to file "any pleading in the case that original parties could have filed." (Citation omitted.) *Woodward v. Lawson*, 225 Ga. 261, 262 (1) (167 SE2d 660) (1969), cert. denied, 396 U. S. 889 (90 SC 175, 24 LE2d 163) (1969). Although a brief is not a pleading, the reasoning behind the rule in *Woodward* would seem to allow an intervenor to file whatever briefs, evidence, or other papers it chooses.

An intervenor's choice of pleadings or argument may on occasion conflict with a plaintiff's choice. An intervenor may have a financial incentive to limit the amount of a plaintiff's recovery to the sum paid as workers' compensation. An intervenor may choose discovery tactics different from those of a plaintiff or may attempt to apportion blame, as in the case at bar, among multiple defendants in a signifi-

cantly different manner from that preferred by the plaintiff.

A trial court's ability to referee such disagreements and conflicts will have to be decided on a case-by-case basis. In the case at bar, the motion to intervene asked that the intervention be "subject to" an order that "the plaintiffs must do nothing at the trial to prejudice the intervenors' lien." However, the order permitting intervention was silent on that point. In one reported case, a trial court approved a consent order including a provision that the plaintiff would do nothing at trial to prejudice the lien, but the point was not raised on appeal. *Sommers v. State Compensation Ins. Fund*, 229 Ga. App. 352, 354 (4) (a) (494 SE2d 82) (1997). The case at bar seems to be the first to address the possibility that intervenors might on occasion do something to prejudice the plaintiff's recovery. Such cases will probably be rare as it would seem to be in the best interests of lienholders to maximize a plaintiff's recovery to better their chances of proving that a claimant has been fully and completely compensated. Moreover, conflicts between plaintiffs and intervenors can be minimized by the use of a special verdict in the trial of the plaintiff's case-in-chief and the severance of the lien's enforceability for a later nonjury trial. See *Sommers*, supra.

Intervention under OCGA § 34-9-11.1 gives the intervenors rights against the defendants and the plaintiffs which are analogous to cross-claims. After the plaintiffs' settlement with the defendants and the approval of their dismissals by the trial court, the claims of the intervenors against the plaintiffs remained for adjudication. On remand, the issue will be whether the total of the settlements fully and completely compensated the employee. See generally *Liberty Mut. Ins. Co. v. Johnson*, 244 Ga. App. 338 (535 SE2d 511) (2000); *Sommers*, supra.

2. Enumerated errors 3 and 4 both assert that the trial court erred when it approved the dismissals of defendants Mid-South and Reynolds. The court's approval was, of course, required. Although a plaintiff may dismiss all of its causes of action at any time prior to verdict, without permission, under OCGA § 9-11-41 (a), dismissing fewer than all defendants is considered to be "dropping" a party and requires the court's permission. OCGA § 9-11-21; *Flemister v. Hopko*, 230 Ga. App. 93 (1) (495 SE2d 342) (1998). The trial court approved the dismissals by an order dated January 26, 2001.

OCGA § 34-9-11.1 allows intervention, but it does not take away a plaintiff's power generally to direct his or her lawsuit against the alleged tortfeasors.[2] The Masseys had the right to settle with one or more defendants. The trial court did not abuse its discretion by

---

[2] We venture no opinion about control disputes in the event an employer or insurer filed suit after one year, and the claimant intervened pursuant to OCGA § 34-9-11.1 (c).

approving the dismissals, nor is there any authority requiring the proceeds to be placed in a constructive trust as requested by IMC and National Union. *Rowland v. Dept. of Admin. Svcs.*, 219 Ga. App. 899 (466 SE2d 923) (1996), does not support the position of the appellants.

The intervenors/appellants argue that a recent decision of our Supreme Court, answering a certified question from the United States Court of Appeals for the Eleventh Circuit, requires us to leave Mid-South and Reynolds as parties to the lawsuit so that the intervenors may pursue a subrogation claim against them. *Ga. Elec. Membership Corp. v. Hi-Ranger, Inc.*, 275 Ga. 197 (563 SE2d 841) (2002). To be sure, *Hi-Ranger* did reach the result desired by the intervenors; a workers' compensation payor was allowed to maintain a suit against an alleged tortfeasor even after the employee settled his claim against the tortfeasor and dismissed his case. Moreover, the Supreme Court ruled that, under the facts of that case, the employee had waived his right to insist on proof of full and complete compensation prior to the enforcement of the lien. Id.

But in *Hi-Ranger*, the injured employee and his employer, who had paid benefits and hence was similarly situated to the insurer in the case at bar, had filed suit jointly against the allegedly responsible third party. The Supreme Court analyzed the case under OCGA § 34-9-11.1 (c), a subsection whose language differs significantly from the subsection applicable here, OCGA § 34-9-11.1 (b). Subsection (c) provides that the employer/insurer may "assert the employee's cause of action in tort." Thus, the employer/insurer may sue whomever it alleges is responsible, and its lawsuit is, under the holding of *Hi-Ranger*, not defeated by a settlement between the employee and the defendants or defendants. But subsection (b) gives an employer/insurer not the employee's cause of action but merely a right to intervene in the employee's lawsuit "to protect and enforce [its] lien." Thus, the General Assembly, by choosing quite different language for the two subsections, seems to have intended to give an employer/insurer a broader opportunity to recover its payments when the employee does not file suit on his own, as provided in subsection (c), and more narrow opportunities for recovery when the employee takes the initiative and sues, as provided in subsection (b).

When a settlement is reached or a judgment is entered in a suit governed by OCGA § 34-9-11.1 (b), the lien attaches to the recovery, "that is, to the money now in the hands of the injured employee." *Rowland*, supra at 901; accord *Powell v. Daniels Constr. & Demolition*, 232 Ga. App. 422, 424 (3) (501 SE2d 578) (1998). After the employee has settled with a defendant, and the lien has attached to the proceeds, there is no longer any purpose for intervention. An employer/insurer cannot continue to pursue a claim against that

defendant when the intervention was pursuant to subsection (b).

A different result would occur, under *Hi-Ranger*, if an action was brought under subsection (c). Likewise, a different result might obtain in a case where an employee settled with a tortfeasor without any lawsuit being brought. See, e.g., *Rowland*, supra. As explained by Chief Justice Fletcher in *Hi-Ranger*, subsection (b) "[i]n practice . . . requires the employer to assert its lien against the employee after the employee has recovered a judgment or settled his claim. The burden is then on the employer to establish that the employee has been fully and completely compensated." (Footnotes omitted.) 275 Ga. at 198 (2). Therefore, the trial court did not err in approving the plaintiffs' dismissals of Mid-South and Reynolds from the lawsuit.

3. Mr. and Mrs. Massey have moved to dismiss the appeal. Because the plaintiffs had settled with all defendants, the dismissal of the intervenors meant that the case was no longer pending below. Therefore, the March 5, 2001 order was final, and a direct appeal was proper. Cf. *Burruss v. Ferdinand*, 245 Ga. App. 203 (1) (536 SE2d 555) (2000) (denial of intervention can be a final judgment). The motion to dismiss is denied.

*Judgment affirmed in part and reversed in part and remanded. Andrews, P. J., and Phipps, J., concur.*

DECIDED JUNE 26, 2002 —
RECONSIDERATION DENIED JULY 29, 2002 

*L. Lee Bennett, Jr.*, for appellants.

*Smith, Price & Wright, Sidney P. Wright, Weinberg, Wheeler, Hudgins, Gunn & Dial, Earl W. Gunn, Ashley P. Nichols, Goldner, Sommers, Scrudder & Bass, Benjamin D. Ladner, Aaron J. Aberson, Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., Davidson & Strain, William E. Davidson, Jr., John M. Strain, Duncan & Mangiafico, Edgar S. Mangiafico, Jr.*, for appellees.

