A03A2451. GEORGIA ELECTRIC MEMBERSHIP
CORPORATION v. GARNTO.
(597 SE2d 527)

ADAMS, Judge.

Curtis E. Garnto sued William G. Pritcherd and Denny Taylor for damages arising out of a December 22, 1998 automobile collision. Georgia Electric Membership Corporation ("GEMC"), Garnto's employer, intervened in the action in order to assert a subrogation claim for Garnto's workers' compensation benefits. Garnto settled his action against Pritcherd and Taylor for $175,000. The trial court subsequently held that GEMC was not entitled to a workers' compensation subrogation lien on the proceeds of the settlement. Claiming that the trial court erred in failing to enforce its lien on the basis of the facts submitted, GEMC appeals. We affirm.

GEMC asserts its subrogation lien under authority of OCGA § 34-9-11.1 (b), which provides:

In the event an employee has a right of action against [a third party for an injury or death for which workers' compensation is payable by the employer] and the employer's liability under this chapter has been fully or partially paid, then the employer or such employer's insurer shall have a subrogation lien, not to exceed the actual amount of compensation paid pursuant to this chapter, against such recovery. The employer or insurer may intervene in any action to protect and

enforce such lien. However, the employer's or insurer's recovery under this Code section shall be limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter and shall only be recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.

The initial prerequisites for GEMC's subrogation lien were met because the December 22, 1998 collision occurred while Garnto was acting in the course of his employment with GEMC, GEMC paid workers' compensation benefits to Garnto as a result of his injuries from the collision, and Garnto pursued a cause of action against third parties arising out of the collision. However, in order for an employer to recover under OCGA § 34-9-11.1 (b), the injured employee must have been "fully and completely compensated." See *Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 256 Ga. App. 866, 873-874 (2) (570 SE2d 60) (2002). This determination is made by comparing the sum of the workers' compensation benefits paid by the intervenor and the amount of the employee's recovery in the third-party action, to all economic and noneconomic losses caused by the injury. See *City of Warner Robins v. Baker*, 255 Ga. App. 601, 604-605 (3) (565 SE2d 919) (2002). For purposes of OCGA § 34-9-11.1 (b), a recovery includes the proceeds of a settlement. *Intl. Maintenance Corp. v. Inland Paper Bd. &c.*, 256 Ga. App. 752, 756 (2) (569 SE2d 865) (2002). GEMC paid $76,509.75 in benefits[1] and Garnto received $175,000 from the settlement with Pritcherd and Taylor. In order for GEMC to recover on its lien, the trial court was required to conclude that the sum of these amounts, $251,509.75, exceeded Garnto's economic and noneconomic losses.

There was no bench trial in this matter, but by mutual agreement of the parties the trial court made its decision based on the briefs and affidavits submitted. Citing *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994), GEMC contends that our standard of review should be de novo because the evidence is uncontroverted and there are no questions of witness credibility. Nevertheless, the trial court was required to make a finding of fact as to whether Garnto was fully and completely compensated; this was a matter disputed by the parties; and the trial court's decision in this matter required more

---

[1] Although the trial court listed the benefits paid as $76,309.75, the parties both state the benefits paid to be $76,509.75.

than applying the law to a given set of facts. See *City of Warner Robins*, 255 Ga. App. at 602 (1) (full and complete compensation a mixed question of law and fact). *Vansant*, on the other hand, involved a review of the trial court's ruling on a motion to suppress and is only applicable where the facts are uncontroverted. *Vansant*, 264 Ga. at 320 (1). Accordingly, unless "clearly erroneous," this Court must defer to the trial court's determination that Garnto was not completely and fully compensated. See *Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 256 Ga. App. at 873 (2).

GEMC had the burden of showing that Garnto had been fully and completely compensated. *Ga. Elec. Membership Corp. v. Hi-Ranger*, 275 Ga. 197, 198 (2) (563 SE2d 841) (2002); *Liberty Mut. Ins. Co. v. Johnson*, 244 Ga. App. 338, 341 (3) (535 SE2d 511) (2000). The trial court found that GEMC had not satisfied this burden. In particular, the trial court wrote that "the Intervenor has not set forth any evidence to substantiate [its] contention that the plaintiff has been fully compensated in accordance with the formula set out by statute or otherwise."

As part of its consideration of whether Garnto had been fully and completely compensated, the trial court found that Garnto's injuries included "a fracture and dislocation of his left hip, a laceration of his left calf, an injury to his left knee, partial paralysis of his left foot, damage to his sciatic nerve, and damage to the peroneal nerve in his left leg." The trial court also found that even after reaching his maximum medical improvement, Garnto had a partial impairment rating of 23 percent to his lower extremities, continued to suffer from a limp, and was limited in performing certain types of work and engaging in certain hobbies. In particular, the record shows that Garnto has a commercial pilot's license and had been employed by a commercial airline in the past, but that his physical condition made it unlikely he would be hired in the future. Garnto was also concerned that he would be unable to pass his "FAA medical," an annual exam required for maintaining his pilot's license that allowed him to fly private planes as well as commercial planes. GEMC does not dispute the findings of the trial court with respect to Garnto's physical condition.

In meeting its burden of proof of showing full and complete compensation, we would expect an intervenor to address the economic losses and noneconomic losses of the injured party. OCGA § 34-9-11.1 (b). GEMC does not show the amount of Garnto's economic losses in either its brief to this court or to the trial court, although in the latter part of its appellate brief GEMC states that Garnto's special damages were roughly equal to the amount of disability benefits paid by GEMC, or $76,509.75. However, we cannot simply assume that workers' compensation disability benefits paid to

Garnto are equal to his economic losses. For instance, while workers' compensation benefits fully cover most medical expenses, see OCGA § 34-9-200, lost wages are not fully covered, see OCGA § 34-9-261 (providing weekly benefit of two-thirds of average weekly wage for temporary total disability), and so without more satisfactory explanation, we must conclude that GEMC did not present any evidence of Garnto's economic loss. Nor did GEMC specifically address Garnto's noneconomic losses.

For purposes of showing that Garnto received full and complete compensation, GEMC presented the affidavit of Tony Watkins, a claims administrator for GEMC who affirmed that he had evaluated thousands of workers' compensation and personal injury cases and was competent to offer an expert opinion on the subject. According to Watkins, personal injury claims are normally evaluated as a multiple of special damages. The multiple is commonly between three and five, adjusted to account for the relative amount of past verdicts within the venue where the case is pending. Because he deemed Ware County to be "relatively conservative," Watkins valued Garnto's claim at three times special damages, or approximately $230,000, which is less than the sum of benefits paid to Garnto from GEMC and the settlement amount.[2]

Given that the trial court found GEMC failed to present "any evidence" on the question of full and complete compensation, it is likely that the trial court found Watkins's affidavit to be without probative value. Watkins's averments that, for instance, "ten thousand dollars of special damages yields a *settlement value* of $30,000-$50,000" (emphasis supplied) and his knowledge of the "manner in which [personal injury] claims are evaluated" tends to show Watkins's expertise lies in how cases are evaluated for purposes of negotiating an insurance settlement and not on how a Ware County jury would likely have evaluated the claim. Even if we were to assume Watkins's affidavit had some probative value as to the valuation of Garnto's economic and noneconomic loss, the trial court was certainly entitled to look beyond Watkins's methodology to consider factors unique to the case before it, such as the trial court's finding that Garnto's "pain and physical limitations are likely to continue for the remainder of his life." Because GEMC failed to carry its burden of showing that Garnto was fully and completely compensated within the meaning of OCGA § 34-9-11.1 (b), we cannot say that the trial court's decision was clearly erroneous. Accordingly, we affirm.

---

[2] We note GEMC can only show "full and complete compensation" under this method by using the lowest multiple of special damages and not, for instance, multiples of four or five, which are also within the range GEMC contends is commonly used in valuing a claim.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED MARCH 23, 2004.

*Akin & Tate, S. Lester Tate III*, for appellant.

*Jones & Smith, Bobby T. Jones, Hall & Kirkland, Samantha J. Poppell*, for appellee.