**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 28, 2015**

# In the Court of Appeals of Georgia

A15A1278. BEST BUY CO. v. McKINNEY.

BARNES, Presiding Judge.

This appeal arises from a dispute over a workers' compensation subrogation lien between an employer, Appellant Best Buy Co., Inc., and its former employee, Appellee Christopher McKinney. At issue is whether the trial court erred in denying Best Buy's motion to enforce its subrogation lien against a settlement reached between McKinney and certain third-party tortfeasors. Discerning no error, we affirm.

The record reflects that in January 2011, McKinney fell off a forklift during the course of his employment with Best Buy. As a result of the fall, McKinney suffered several facial bone fractures and brain damage. McKinney underwent multiple surgeries and received facial implants, and his face is now permanently disfigured and he experiences ongoing cognitive problems caused by his traumatic brain injury. Because of McKinney's injuries sustained from the fall, Best Buy has paid and continues to pay workers' compensation benefits to McKinney.

In January 2013, McKinney filed a negligence and strict liability suit in the State Court of DeKalb County against several defendants involved in the manufacture and maintenance of the forklift from which he fell (the "tort defendants"). Pursuant to OCGA § 34-9-11.1 (b), Best Buy moved to intervene in the suit to protect its right to a workers' compensation subrogation lien against any recovery obtained by McKinney from the tort defendants, and the trial court ultimately granted the motion to intervene.

In May 2014, McKinney and the tort defendants attended mediation and settled the case shortly thereafter. In June 2014, McKinney dismissed with prejudice his suit against the tort defendants in light of the settlement.

When McKinney dismissed his suit against the tort defendants, Best Buy filed its motion to enforce its lien against the proceeds of the settlement and requested that the trial court conduct an evidentiary hearing to address the motion. Best Buy argued that it was entitled to an evidentiary hearing so that it could present evidence that McKinney had been "fully and completely compensated" for all of his economic and noneconomic losses incurred as a result of his injuries, a statutory prerequisite for enforcement of a lien under OCGA § 34-9-11.1 (b).

The trial court granted Best Buy's request for an evidentiary hearing to determine whether McKinney had been fully and completely compensated, and thus whether Best Buy was entitled to recover under its subrogation lien. At the hearing held in September 2014, Best Buy presented the testimony of two witnesses. The first witness was the general manager of the Best Buy store where McKinney had worked. She testified that, as of September 4, 2014, McKinney had received $173,679.49 in workers' compensation benefits, which included $162,753.08 in medical benefits and $10,926.41 in income benefits. The second witness was a lawyer who was a partner in an Atlanta law firm who had experience in litigation and mediation. The lawyer sought to demonstrate that McKinney had been fully and completely compensated for his losses by comparing his case to that of other reported civil tort cases involving plaintiffs who suffered head injuries.

After the lawyer testified, Best Buy rested its case. McKinney did not present any evidence, other than the settlement agreement that he had reached with the tort defendants and a settlement statement prepared by his counsel, both of which were filed under seal.

The trial court heard argument from the parties and took the matter under advisement, but the court noted from the bench that it was not persuaded by the

3

lawyer's testimony comparing McKinney's case to other cases. The trial court thereafter entered a written order in which it denied Best Buy's motion to enforce its subrogation lien,[1] finding that Best Buy had failed to carry its burden of proving that McKinney had been fully and completely compensated for his economic and noneconomic losses resulting from his injuries.

1. Best Buy contends that the trial court erred in finding that it failed to prove that McKinney had been fully and completely compensated. According to Best Buy, the evidence demanded a finding that McKinney had been fully and completely compensated, given the testimony of the lawyer at the hearing and the lack of evidence presented by McKinney. We are unpersuaded.

Under the Workers' Compensation Act (the "Act"), OCGA § 34-9-1 et seq., if an employer pays workers' compensation benefits to an employee who was injured while acting in the course and scope of his employment, and the employee sues a third party for causing the injuries, the employer can intervene in the suit and seek to enforce a subrogation lien against any recovery obtained by the employee from the third party. OCGA § 34-9-11.1 (b). A "recovery" to which the lien can attach includes

---

[1] The trial court also denied the parties' respective motions for sanctions, but neither party has appealed that ruling.

4

the proceeds of any settlement between the employee and third party. *Georgia Elec. Membership Corp. v. Garnto*, 266 Ga. App. 452, 453 (597 SE2d 527) (2004). But the lien is limited

> to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under [the Act] and shall only be recoverable if the injured employee has been *fully and completely compensated*, taking into consideration both the benefits received under [the Act] and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.

 (Emphasis supplied.) OCGA § 34-9-11.1 (b). In other words, a precondition to the enforcement of the lien is that the employee have been fully and completely compensated for his losses, a determination that "is made by comparing the sum of the workers' compensation benefits paid by the [employer] and the amount of the employee's recovery in the third-party action, to all economic and noneconomic losses caused by the injury." *Georgia Elec. Membership Corp.*, 266 Ga. App. at 453.

The employer has the burden of proving that the injured employee has been fully and completely compensated for his economic and noneconomic losses, and whether the employer has carried that burden is a question for the trial court. *Georgia Elec. Membership Corp.*, 266 Ga. App. at 454; *Anthem Cas. Ins. Co. v. Murray*, 246

5

Ga. App. 778, 780 (1) (542 SE2d 171) (2000). On appeal, we defer to the trial court's determination as to whether there has been full and complete compensation unless clearly erroneous. *Georgia Elec. Membership Corp.*, 266 Ga. App. at 454; *Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 256 Ga. App. 866, 872-873 (2) (570 SE2d 60) (2002).

In deciding whether an employee has been fully and completely compensated, the trial court should not "take into account the employee's contributory/comparative negligence or assumption of the risk." *Homebuilders Assoc. of Ga. v. Morris*, 238 Ga. App. 194, 196 (518 SE2d 194) (1999). See *Canal Ins. Co.*, 256 Ga. App. at 873 (2). Furthermore, because a subrogation lien "is available only against recovery for economic losses," a trial court cannot enforce the lien against the portion of the employee's recovery that was meant to compensate him for his noneconomic losses, i.e., his pain and suffering. *Anthem Cas. Ins. Co.*, 246 Ga. App. at 780 (1). See *Canal Ins. Co.*, 256 Ga. App. at 873 (2). Hence, we have held that if the trial court is unable to determine what portion of the employee's recovery against the third party was meant to compensate him for his economic losses versus his noneconomic losses, the court cannot enforce the lien. See *City of Warner Robins v. Baker*, 255 Ga. App. 601, 604-605 (3) (565 SE2d 919) (2002); *Anthem Cas. Ins. Co.*, 246 Ga. App. at 780 (1).

6

Guided by these principles, we turn to the record in the present case. As previously noted, Best Buy relied upon the lawyer's testimony at the hearing to demonstrate that McKinney had been fully and completely compensated. The lawyer was a certified mediator and had experience handling civil litigation and workers' compensation cases in the metropolitan Atlanta area, including DeKalb County. The lawyer reviewed the settlement agreement reached between McKinney and the tort defendants, and he compared McKinney's total recovery in workers' compensation benefits and settlement proceeds to the jury verdicts obtained in four other reported civil tort cases involving plaintiffs who suffered head injuries. One of the four cases involved a domestic violence assault, while the other three involved motor vehicle accidents. Based on the damages awarded by the jury in those four cases, the lawyer concluded that McKinney's total recovery in workers' compensation benefits and settlement proceeds exceeded the amount he likely would have been awarded by a jury.

The lawyer also conducted research into McKinney's employment history. According to the lawyer, McKinney had continued to serve as an assistant high school football coach and then had held coaching positions with several arena football teams after falling from the forklift.

Based on his research into the damages awarded in the other four civil tort cases and McKinney's career trajectory after sustaining his injuries, the lawyer opined that McKinney had been fully and completely compensated for his economic and noneconomic losses by the workers' compensation benefits and settlement proceeds he had recovered.

On cross-examination, however, the lawyer conceded that in valuing a case in his own litigation practice, he would not have simply compared the case to the damages awarded by juries in other reported cases, but would have personally observed the plaintiff testifying in his deposition, reviewed all the depositions and documents that were material to the case, and considered the quality of opposing counsel. The lawyer acknowledged that he had never seen McKinney or interviewed him, had not reviewed McKinney's deposition in the third-party tort case or his medical records, and had not read the depositions of the other witnesses in the case or spoken to any of the witnesses to McKinney's injuries.

With respect to the other four cases he had identified, the lawyer conceded that he did not know the extent of the traumatic brain injuries sustained by the plaintiffs in those cases and had not compared the level of disfigurement between McKinney and those plaintiffs. Indeed, the lawyer had never seen photographs of the plaintiffs

in the other four cases and thus did not know to what extent they were disfigured by their injuries. Nor did the lawyer know whether or to what extent the jury awards in the four cases were reduced because of contributory or comparative negligence of those plaintiffs. Additionally, the lawyer did not evaluate the quality of the attorneys representing the parties in those four cases.

With respect to McKinney's football coaching career after sustaining his injuries, the lawyer admitted that he did not know how much McKinney had earned or continued to earn from coaching and had not spoken with any of his coworkers or family. The lawyer also acknowledged that he had not reviewed or considered any evidence of McKinney's lost wages. Rather, the only wage information he considered in the case was a report showing the workers' compensation income benefits McKinney had received. The lawyer further noted that while some portion of the settlement proceeds recovered by McKinney would have been for his pain and suffering rather than lost wages, he did not know what portion of the settlement was for pain and suffering, given that the settlement document did not differentiate between the proceeds meant to compensate for economic losses versus those meant to compensate for noneconomic losses.

After the close of evidence at the hearing, the trial court noted that it "wasn't really impressed" by the lawyer's analysis and testimony. The court pointed out that the lawyer had not read McKinney's deposition and was unaware of the extent of McKinney's injuries or his long-term prognosis, making comparison of his case to the other four cases identified by the lawyer difficult "because cognitive issues can be very different among different plaintiffs."

The trial court subsequently entered a written order denying Best Buy's motion to enforce its subrogation lien. In its order, the court found that Best Buy had failed to meet its burden of proving that McKinney had been fully and completely compensated for his economic and noneconomic losses, noting that the lawyer had acknowledged at the hearing that he did not know the details of McKinney's injuries or of the plaintiffs' injuries in the four other cases he had identified. The trial court further found that Best Buy could not enforce its lien because Best Buy did not show what portion of the settlement proceeds recovered by McKinney were intended to compensate him for his noneconomic losses, i.e., his pain and suffering.

The trial court's conclusion that Best Buy did not meet its burden of showing that McKinney had been fully and completely compensated is supported by the record. In light of the cross-examination of the lawyer detailed above, the trial court

10

was entitled to find that the lawyer had failed to gather all of the essential factual information necessary for a valid comparison between McKinney's case and the other four civil tort cases that he had identified, and thus was entitled to conclude that the lawyer's evaluation was too speculative to be credible. The trial court also was authorized to find that the lawyer's evaluation of McKinney's career trajectory carried little weight because he did not gather essential information about McKinney's wages. In light of these deficiencies in the lawyer's testimony, some evidence supported the trial court's finding that Best Buy did not meet its burden of proving full and complete compensation. See *CGU Ins. Co. v. Sabel Indus.*, 255 Ga. App. 236, 241 (1) (564 SE2d 836) (2002) (affirming trial court's finding that insurer failed to meet burden of showing full and complete compensation, where there was evidence that insurer's experts failed to interview the employee and gather other factual information that was "essential to an accurate determination of [the employee's] losses"). See generally *Liberty Mut. Ins. Co. v. Johnson*, 244 Ga. App. 338, 340-341 (3) (535 SE2d 511) (2000) (trial court's factual determination affirmed because some evidence showed that employee was not fully and completely compensated).

Additionally, the trial court was entitled to find that Best Buy had failed to prove full and complete compensation, given that Best Buy was unable to show what portion of the settlement proceeds recovered by McKinney were for economic losses versus noneconomic losses. The settlement document itself did not apportion the proceeds between economic and noneconomic losses. And while Best Buy presented evidence of the amount of workers' compensation benefits received by McKinney, "we cannot simply assume that [the] benefits paid to [him] are equal to his economic losses," given that lost wages are not fully covered by income benefits paid under the Act.[2] *Georgia Elec. Membership Corp.*, 266 Ga. App. at 454-455. Nor did Best Buy specifically address McKinney's noneconomic losses, and, in fact, the lawyer witness conceded that he was unable to differentiate between the economic and noneconomic damages awarded as part of the settlement. Best Buy's inability to differentiate between McKinney's economic and noneconomic losses is fatal to its effort to

[2] Best Buy also points to McKinney's brief opposing enforcement of the subrogation lien, where McKinney listed certain medical bills that he had incurred as a result of his injuries. But McKinney's brief did not quantify his lost past and future wages and did not purport to provide an exhaustive list of all of the economic losses he had sustained. And, as previously indicated, the burden was on Best Buy, not McKinney, to present evidence of the extent of McKinney's economic losses caused by his injuries, including whether and to what extent his wages were affected. See *Liberty Mut. Ins. Co.*, 244 Ga. App. at 341 (3).

12

enforce its lien. See *Paschall Truck Lines v. Kirkland*, 287 Ga. App. 497, 499 (651 SE2d 804) (2007) (employer unable to prove that employee had been fully and completely compensated, given that settlement agreement between employee and third party did not identify which portion of the proceeds were for economic versus noneconomic losses, and the employer did not come forward with any other evidence to address the issue). See also *Canal Ins. Co.*, 256 Ga. App. at 873 (2); *City of Warner Robins*, 255 Ga. App. at 604 (3).

For these combined reasons, the trial court's finding that Best Buy was unsuccessful in proving that McKinney had been fully and completely compensated for his economic and noneconomic losses was not clearly erroneous. The trial court therefore properly denied Best Buy's request to enforce its lien against the settlement proceeds recovered by McKinney.

2. Best Buy further contends that the trial court erred in finding that it failed to prove that McKinney had been fully and completely compensated because the court relied upon "erroneous law." Best Buy points out that in the trial court's order denying the motion to enforce the subrogation lien, the court quoted the following language that appears in several Georgia cases (hereinafter, the "language at issue"):

[W]hen the employee negotiates a settlement of his claim against the tortfeasor and the settlement is a lump sum, a reviewing court cannot determine from the settlement documents what portion of the settlement was allocated to economic losses and what portion was meant to compensate for noneconomic losses. The result is that the lien cannot be enforced, because full and complete compensation cannot be shown.

*Paschall Truck Lines*, 287 Ga. App. at 499, quoting *City of Warner Robins*, 255 Ga. App. at 604-605 (3). According to Best Buy, the language at issue was undermined and limited by our Court in the recent case of *SunTrust Bank v. Travelers Prop. Cas. Co. of America*, 321 Ga. App. 538, 542-546 (1) (b) (740 SE2d 824) (2013) (physical precedent only), and, as a result, the trial court erred in relying upon that language in its order. We are unpersuaded for several reasons.

First, two of the three judges in *SunTrust Bank* concurred in judgment only. 321 Ga. App. at 547. The opinion thus decided only the issues presented in that case and is not binding precedent of this Court. See Court of Appeals Rule 33 (a).

Second, the opinion in *SunTrust Bank* simply pointed out that cases that have quoted the language at issue do not prohibit a trial court – in the circumstance where the employee has reached a settlement with a third party without the input or consent of the employer – from conducting an evidentiary hearing where the employer is

allowed an opportunity to prove that the employee was fully and completely compensated for his losses. 321 Ga. App. at 545-546 (1). And the trial court in the present case clearly reached the same conclusion because it conducted an evidentiary hearing where Best Buy was afforded an opportunity to prove that McKinney was fully and completely compensated.

Third and finally, Best Buy's argument is foreclosed by *Austell Healthcare v. Scott*, 308 Ga. App. 393, 395-396 (1) (707 SE2d 599) (2011), where the employer and its insurer similarly complained about the language at issue appearing in the trial court's order declining to enforce their subrogation lien. This Court stated:

> [The employer and insurer's] argument that the trial court erroneously held that they "cannot" show that [the employee] was fully compensated is unavailing. . . . In order to prevail on their argument to this Court that the trial court erred in extinguishing their lien, [they] must come forward with a proffer of sufficient evidence to show that [the employee] was fully compensated and that the trial court refused to consider this evidence. They have done neither. Accordingly, there is nothing before us to show that the trial court's order extinguishing the lien was not proper. This enumeration of error is without merit.

15

Similarly, in the present case, Best Buy has not shown that it came forward with evidence that McKinney was fully and completely compensated that the trial court refused to consider.

For these reasons, we conclude that the trial court did not rely upon an erroneous interpretation of the law in determining that Best Buy had been unsuccessful in proving that McKinney had been fully and completely compensated for his losses. We therefore affirm the trial court's order denying Best Buy's motion to enforce its subrogation lien.

*Judgment affirmed. Ray and McMillian, JJ., concur.*