In the Supreme Court of Georgia

Decided:    Novemberr 16, 2015

S15Q1222. WALKER et al. v. TENSOR MACHINERY, LTD. et al.

BLACKWELL, Justice.

Just a few months ago, we held in Zaldivar v. Prickett, 297 Ga. 589 (774 SE2d 688) (2015), that OCGA § 51-12-33 (c) — which directs the trier of fact in certain cases to "consider the fault of all persons or entities who contributed to the alleged injury or damages" — refers to the "fault" of "all persons or entities who have breached a legal duty in tort that is owed with respect to the plaintiff, the breach of which is a proximate cause of the injury sustained by the plaintiff . . . , regardless of whether such tortfeasor would have actual liability in tort to the plaintiff." Zaldivar, 297 at 600 (1) (footnote omitted). "[T]he apportionment statute permits consideration, generally speaking, of the 'fault' of a tortfeasor, notwithstanding that he may have a meritorious affirmative defense or claim of immunity against any liability to the plaintiff." Id. at 598 (1) (footnote omitted). Before we issued our decision in Zaldivar, the United States

District Court for the Northern District of Georgia certified the following question to us:

> Does OCGA § 51-12-33 (c) allow the jury to assess a percentage of fault to the non-party employer of a plaintiff who sues a product manufacturer and seller for negligence in failing to warn about a product danger, even though the non-party employer has immunity under OCGA § 34-9-11?

Unless there is a compelling reason to treat nonparty employers with immunity under the Workers' Compensation Act differently than nonparties with other defenses or immunities against liability, Zaldivar requires an affirmative answer to the certified question. We see no such compelling reason, and so, we adhere to Zaldivar and respond to the District Court in the affirmative.

We begin with a brief summary of this litigation. Jock L. Walker was injured at work in August 2010 while he operated a machine that had been designed and manufactured by Tensor Machinery, Ltd. and Tensor Fiber Optic Technologies, Ltd. (collectively, "Tensor"). After reaching a settlement with his employer for workers' compensation benefits, Walker sued Tensor, alleging that it negligently failed to warn him of safety-related defects in the machine.[1]

---

[1] Walker's wife also sued Tensor for loss of consortium. For the purposes of this opinion, however, there is no need to distinguish between Walker and his wife, and so, we refer to both simply as "Walker."

2

Tensor then gave notice under OCGA § 51-12-33 that it intended to ask the trier of fact in this case to assign some responsibility for Walker's injuries to his employer. In response, Walker filed a motion in limine to exclude all evidence concerning fault on the part of his employer, asserting that OCGA § 51-12-33 does not allow a plaintiff to apportion fault to a nonparty employer that has immunity from liability in tort by virtue of the exclusive remedy provision of the Workers' Compensation Act, OCGA § 34-9-11.

Although our opinion in Zaldivar did not focus on this issue, we did have occasion to speak of it in our opinion. The defendant in that case, like Tensor, sought to assign some responsibility to the plaintiff's employer, and we noted that if the plaintiff had sued his employer (for negligent entrustment),

> he might well have lost as a result of comparative negligence . . . or as a result of some other affirmative defense (*such as the exclusive remedy provisions of the Workers' Compensation Act*). But an affirmative defense or immunity does not eliminate "fault" or cut off proximate cause, it only bars liability notwithstanding that the "fault" of the tortfeasor was a proximate cause of the injury in question.

Zaldivar, 297 Ga. at 604 (2) (emphasis supplied). Moreover, two of the foreign cases upon which we relied in Zaldivar specifically approved consideration of the nonparty employer's fault under similar apportionment statutes

3

notwithstanding the exclusive remedy provisions of the applicable workers' compensation statutes. Id. at 599 (1) (citing Williams v. White Mountain Constr. Co., 749 P2d 423, 429 (III) (B) (Colo. 1988), and Sedgwick Ins. v. CDS, Inc., 47 FSupp.3d 536, 549 (B) (2) (E.D. Mich. 2014)). Georgia commentators have drawn similar conclusions. See Franklin E. Jenkins III & Wallace Miller III, Ga. Automobile Insurance Law § 48:3 (i) (2014-2015 ed.) ("[t]he rationale in Barnett v. Farmer, [308 Ga. App. 358, 362 (2) (707 SE2d 570) (2011) (physical precedent that Zaldivar, 297 Ga. at 598 (1) — which also cited this treatise — relied on as persuasive Georgia authority)] . . . should extend to virtually any form of tort immunity, including . . . workers' compensation as [an] exclusive remedy"); Thomas A. Eaton, *Who Owes How Much? Developments in Apportionment and Joint and Several Liability under OCGA § 51-12-33*, 64 Mercer L. Rev. 15, 33, n. 104 (IV) (A) (2012) ("employees who are injured on the job and bring tort actions against third parties will now have their recovery against third parties reduced by any percentage of fault assigned to the plaintiffs' employers" even though their liability is limited by workers' compensation) (quoted in Jenkins & Miller, supra at 48:3 (i), n. 38).

Other jurisdictions have recognized that "[i]t is accepted practice to include all tortfeasors in the apportionment question. This includes . . . persons alleged to be negligent but not liable in damages to the injured party such as in the third-party cases arising in the work[ers'] compensation area." Sullivan v. Scoular Grain Co. of Utah, 853 P2d 877, 882 (I) (D) (Utah 1993) (quoting Carroll R. Heft & C. James Heft, Comparative Negligence Manual § 8.100, at 14 (rev. ed. 1992)). See also Fabre v. Marin, 623 S2d 1182, 1187 (Fla. 1993) (quoting an earlier edition of the same treatise); 57B AmJur2d Negligence § 1037 (database updated August 2015). More specifically, this rule is followed in jurisdictions that have apportionment schemes similar to that of OCGA § 51-12-33, in which, consistent with the analysis in Zaldivar, 297 Ga. at 597 (1),[2] a meritorious affirmative "defense or immunity may cut off liability, [but] a

---

[2] In Zaldivar, 297 Ga. at 600, n. 7 (1), we distinguished jurisdictions, like Tennessee, "without *statutory* authority for the assignment of fault to nonparties." (Citations omitted; emphasis in original.) For the same reason, we do not consider Carroll v. Whitney, 29 SW3d 14, 19 (Tenn. 2000), to be persuasive authority for departing from the general rule that responsibility should be assigned to at-fault employers under apportionment statutes. See Ocasio v. Fed. Express Corp., 33 A3d 1139, 1148 (II) (A) (3) (a) (N.H. 2011) (declining to follow Carroll for the proposition that immune employers should be exempt under New Hampshire's apportionment statute). Moreover, it does not appear that in Tennessee, any potential unfairness is mitigated, as in Georgia, by a workers' compensation statute that allows subrogation, which we discuss below, "only if the injured employee has been fully and completely compensated . . . ." OCGA § 34-9-11.1 (b).

5

tortfeasor is still a tortfeasor, and nothing about his defense or immunity" means that he was not at fault by his commission of a tort that was the proximate cause of the plaintiff's injury:

> Immunity from liability does not prevent an immune party from acting or omitting to act. Rather, immunity shields that party from any liability stemming from that act or omission. There is nothing logically or legally inconsistent about allocating fault but shielding immune parties from liability for that fault. And there is no reason to imagine that the Legislature did not intend fault to be allocated against immune parties, insofar as that allocation can be of no detriment to those parties.

Mack Trucks v. Tackett, 841 S2d 1107, 1114 (III) (a) (Miss. 2003) (footnote omitted). See also Ocasio v. Fed. Express Corp., 33 A3d 1139, 1147 (II) (A) (3) (a) (N.H. 2011) ("[A]llocating fault to an employer does not destroy, or even affect, the employer's immunity from suit. Immunity does not mean that a party is not at fault; it simply means that the party cannot be sued." (Citation and punctuation omitted)); Mills v. MMM Carpets, 1 Cal. Rptr. 3d 813, 818 (Ct. App. 1991) ("the negligent employer's fault in a case like this one is measured, not in order to impose tort liability on it, but to determine the comparative fault and commensurate liability of a defendant in the action").

Nevertheless, Walker says, the allocation of fault under OCGA § 51-12-33 (c) to nonparty employers with immunity under the Workers' Compensation Act would upset the careful balance that the General Assembly struck in the Act between the respective interests of employers and employees, and for that reason, Walker urges, OCGA § 51-12-33 (c) cannot reasonably be understood to permit such an allocation of fault. We disagree. The General Assembly has determined that the exclusive remedy provision and limited benefits of the workers' compensation system, OCGA § 34-9-11, are "the quid pro quo for workers receiving a guarantee of prompt benefits for work-related injuries without regard to fault or common-law defenses and without the delay inherent in tort litigation." Doss v. Food Lion, 267 Ga. 312, 313 (2) (477 SE2d 577) (1996). "Allocating fault to an immune employer does not disturb this quid pro quo relationship between employee and employer or the legislative policy underlying it. A plaintiff may still obtain benefits, without having to prove the employer's negligence, and the employer is still immune from liability." Ocasio, 33 A3d at 1147 (II) (A) (3) (a).

> The result of immunizing employers from fault as well as from liability is that third parties pick up the tab for the employer's fault, potentially paying more than their share in order to make up for the

7

excluded employer. . . . The question becomes whether the injured plaintiff must see his potential recovery diminished by an assignment of fault to his immune employer or whether a third party defendant may be made to respond in damages in an amount that exceeds that defendant's proportionate share of fault in causing the injury. . . . [T]he more equitable result is to permit allocation of fault to the exempt employer. While this diminishes the injured party's ultimate recovery in the tort action, the injured party has already obtained or may, post verdict, seek recovery under the compensation law from his employer. This right of recovery under workers' compensation law is specifically intended to replace the previously-existing common law right of recovery against the employer in tort. To immunize employers from fault allocation in third-party tort suits would go against the spirit of the bargain between employers and employees that underlies workers' compensation; instead, the third party would pay the employer's cost of compensation, and the employee would have the possibility of recovering in tort for his employer's fault, since that would then be allocated to the third party. This certainly would benefit employers, and to some extent plaintiffs — but third parties should not be assessed to supplement our system of workers' compensation.

Mack Trucks, 841 S2d at 1115 (III) (a) (citations and emphasis omitted). See also Sullivan, 853 P2d at 882 (I) (D) ("There is nothing inherently fair about a defendant who is, for example, 10% at fault paying 100% of the loss." (Citation and punctuation omitted)); Restatement (Third) of Torts: Apportionment Liab. § B19 cmt. 1 (2000) ("The adoption of several liability, coupled with the submission of the nonparty employer for assignment of comparative

responsibility, as provided in this Section, ends the unfairness to independent tortfeasors. Each tort defendant is only responsible for its comparative share of plaintiff's damages.").

Nor would the assignment of fault to a nonparty employer eviscerate the role that subrogation plays in the workers' compensation system, as Walker suggests. Under OCGA § 34-9-11.1 (b), if an employer or its insurer has at least partially paid its workers' compensation liability to an injured employee, the employer or insurer may have a right of subrogation against damages that the employee recovers from a third party. But this right of subrogation is limited to the amount of certain benefits paid to the employee, and importantly, it is available only "if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury."[3] OCGA § 34-9-11.1

---

[3] We observe at this point that in some jurisdictions, unlike Georgia, "employers may obtain full subrogation from the tort award, even though that award has been reduced by virtue of the employers' own fault. While this result has been recognized as inequitable, one court[, Sullivan, 853 P2d at 883 (I) (D),] felt constrained to comply with a clear, if outdated, statutory mandate." Restatement (Third) of Torts: Apportionment Liab. § B19, reporter's note to cmt. l (2000).

9

(b). The purposes of these provisions are to provide "a means for recouping the employer's loss and to prevent a double recovery by the employee and to do substantial justice," Southern R. Co. v. Overnite Transp. Co., 223 Ga. 825, 830 (6) (158 SE2d 387) (1967), while assuring "that the injured employee first be made whole." North Bros. Co. v. Thomas, 236 Ga. App. 839, 840 (513 SE2d 251) (1999).

No doubt, the right of subrogation may be further limited in some cases by an allocation of fault to a nonparty employer. After all, if fault is assigned to the nonparty employer, it will reduce the amount that the injured employee recovers in tort, thereby lessening the likelihood that the employee will receive enough compensation (apart from his workers' compensation benefits) to give the employer a subrogation claim. There is nothing, however, about this reality that is so inequitable for employers that it would lead us to conclude that OCGA § 51-12-33 (c) was not meant to permit the allocation of fault to nonparty employers. After all, the idea that an employer should bear some cost (still limited, of course, to its liability for workers' compensation benefits) for its own fault — as opposed to that cost being borne by another tortfeasor — is not an inherently unfair one. And for employers without fault, the allocation of fault

10

to employers under OCGA § 51-12-33 (c) does not affect their right of subrogation in the least.[4] The allocation of fault to nonparty employers is not inconsistent with the limited right of subrogation under the Workers' Compensation Act.[5]

---

[4] We concede that an employer not really at fault might still be assigned fault in a tort case brought by the employee against a third party — a case to which the employer is not a party — and that the employer may suffer a limitation of its right of subrogation as a result. The possibility that the right of the employer to subrogation might be effectively impaired by proceedings to which the employer is not a party exists whether or not fault can be allocated to a nonparty employer. Indeed, that is exactly why the employer or its insurer has a statutory right to intervene in the proceedings for the purpose of protecting its right to subrogation. See OCGA § 34-9-11.1 (b).

[5] We also observe that the enactment of OCGA § 51-12-33 (c) did not affect the subrogation rights of employers in cases in which the plaintiff's recovery is reduced by his own comparative negligence. It is true that, under OCGA § 51-12-33 (a) and (g), the plaintiff's negligence reduces or eliminates his recovery in tort, thereby reducing the amount of the employer's subrogation in the same way that assignment of fault to the employer effectively limits its subrogation rights. But comparative negligence had the same effect on the employer's right to subrogation before the apportionment statute was enacted in 2005. Under Homebuilders Assn. of Ga. v. Morris, 238 Ga. App. 194, 196-197 (518 SE2d 194) (1999), comparative negligence could not be considered when determining whether the plaintiff had been fully and completely compensated for his losses pursuant to OCGA § 34-9-11.1 (b), and so the amount of the employer's subrogation normally was less than it would have been if there had not been any comparative negligence and instead a higher percentage of fault had been assigned to the non-employer defendant. We conclude that assignment of responsibility under the apportionment statute to either an at-fault employer or a negligent plaintiff, and the corresponding effect on the employer's right to subrogation, is consistent with the requirements of both the apportionment and the workers' compensation statutes, resulting in a balanced and substantial justice in keeping with the purposes of the workers' compensation system. See Southern R., 223 Ga. at 830 (6); North Bros., 236 Ga. App. at 840.

11

Walker argues as well that the allocation of fault to a nonparty employer under OCGA § 51-12-33 (c) would expose employers to new and substantial litigation costs, against which, he says, they previously were shielded by virtue of their immunity from tort liability under the Workers' Compensation Act. We disagree. Under the exclusive remedy provisions of the Workers' Compensation Act, the employer entirely avoids having to defend against tort litigation and remains immune from tort liability regardless of any assignment of fault pursuant to OCGA § 51-12-33 (c). No doubt, an employer may have to respond to requests for discovery that are relevant to its fault with respect to an injury to its employee, but employers long have been subject to discovery for other purposes in cases in which employees have been injured on the job. To begin, an employer is always subject to the discovery procedures of the Civil Practice Act in any administrative proceeding regarding a claim for workers' compensation benefits. OCGA § 34-9-102 (d). More significant, even before enactment of OCGA § 51-12-33 (c), employers already were subject to nonparty discovery, see OCGA § 9-11-34 (c), related to claims by an employee against other alleged tortfeasors for workplace injuries, such as Walker's product liability claims in this case against Tensor. Regardless of whether any fault

12

could be assigned to the employer, parties to such cases might be expected to demand discovery of business records and other documents of an employer, depositions and trial testimony of managers and other employees, and perhaps access to the workplace for evaluation and testing of equipment. In a products liability action such as this, those discovery requests could have numerous purposes other than to discover fault on the part of the employer: supporting or refuting the elements of the employee's tort action, as well as the potential defenses available to the non-employer defendant against the employee's action, including the statute of repose, legal accident, contributory negligence, assumption of the risk, federal preemption, and the learned intermediary rule. See, e.g., Charles R. Adams III, Ga. Law of Torts §§ 25:8 through 25:10 (database updated December 2014); J. Kennard Neal, Ga. Products Liability Law, Chap. 11 (4th ed., database updated April 2015). The wide range of facts that the parties may seek to discover from the employer could include the dates that an allegedly defective product was delivered and installed in the workplace, warnings and directions about the use of the product, the maintenance history and any modifications of the product, other incidents concerning the product of which the employee would or could have been aware at the time of his injury,

13

the work and disciplinary history of the employee, his training and experience with the product at issue and similar products, any misuse of the product by the employee, his condition just prior to the injury, and the notice that he provided about his injury. The allocation of fault to nonparty employers simply adds one additional subject about which employers may be subject to nonparty discovery.

Accordingly, we see no reason to limit our interpretation of OCGA § 51-12-33 (c) in Zaldivar and prohibit a trier of fact from assigning fault to a nonparty employer that has immunity under the exclusive remedy provisions of the Workers' Compensation Act. As we explained in Zaldivar, "the apportionment statute permits consideration, generally speaking, of the 'fault' of a tortfeasor, notwithstanding that he may have a meritorious affirmative defense or claim of immunity against any liability to the plaintiff." 297 Ga. at 598 (1) (footnote omitted). "[W]e do not conclude that immune employers should be treated differently than other immune tortfeasors." Ocasio, 33 A3d 1148 (II) (A) (3) (a). We, therefore, answer the certified question in the affirmative.

Certified question answered. All the Justices concur, except Benham and Hunstein, JJ., who dissent.

S15Q1222. WALKER et al. v. TENSOR MACHINERY, LTD. et al.

BENHAM, Justice, dissenting.

In my opinion, this case calls on the Court to reconsider and refine the holding in our recent opinion *Zaldivar v. Prickett*, 297 Ga. 589 (774 SE2d 688) (2015). In *Zaldivar*, this Court granted a petition for certiorari and requested the parties to brief one particular issue: whether OCGA § 51-12-33 (c) permits the defendant in a tort action involving an automobile collision to name, as a nonparty whose fault should be apportioned to reduce the total damages for which the defendant is liable, that party who allegedly negligently entrusted to the plaintiff the vehicle plaintiff was driving. In the *Zaldivar* case, that nonparty was the plaintiff's employer. The parties in *Zaldivar*, however, were not asked to address the unique issues surrounding whether the fault of a nonparty who is an employer, immune from tort liability pursuant to the worker's compensation scheme of this state, should be included in the jury's apportionment of damages pursuant to the apportionment statute. Accordingly, the parties did not brief these issues or address them in their arguments to the Court. Likewise, the majority opinion in *Zaldivar* focused primarily on whether negligent

entrustment of a vehicle to a plaintiff by a nonparty is a tort against the plaintiff that can be a proximate cause of plaintiff's injury. The workers' compensation issues, however, are front and center in the case currently before us.

When construing subsection (c) of the apportionment statute in conjunction with OCGA § 34-9-11, the exclusive remedy provision of Georgia's workers' compensation law, I conclude that a jury is not permitted to assess a percentage of fault to a non-party employer of a plaintiff who sues a product manufacturer and seller for negligence in failing to warn about a product danger. I am convinced that the relevant terms of the workers' compensation law provides the "compelling reason" sought by the majority opinion in this case to treat nonparty employers with immunity from suit differently from other nonparties against whom apportionment may be assessed. Consequently, I believe the answer to the certified question is no. As I did in *Zaldivar*, I respectfully dissent. See *Zaldivar*, supra, 297 Ga. at ____, Benham, J., dissenting. In my opinion, the majority does not properly consider or analyze the unique aspects of Georgia's workers' compensation scheme and the unintended consequences of such an application of the apportionment rule upon plaintiffs in tort actions who also have claims against their employer which are

2

subject to the workers' compensation law, and also upon nonparty employers who are subject to the terms of that law.

Compliance with Georgia workers' compensation law is compulsory. The employer, as defined by the workers' compensation law, is subject to both civil and criminal penalties for failure to provide coverage of the benefits to employees required by that law.[1]  The benefits set forth in the law are the exclusive remedy available to an employee for a work-related "injury," as that term is defined by statute.[2]  Those benefits are limited.[3]  As a trade-off, the workers' compensation law grants a no-fault remedy to the employee for covered injuries.  The quid pro quo established between the interests and rights given up and the benefits received by both the employer and the employee is the underlying policy of the law.  See *Samuel v. Baitcher*, 247 Ga. 71, 72 (274 SE2d 327) (1981).

An employee who sustains an injury that is compensable under the workers' compensation law may, as in this case, pursue a claim for damages

---

[1]  See OCGA §§ 34-9-126 and 34-9-18.

[2]  See OCGA §§ 34-9-1 (4) and 34-9-11.

[3]  For example, pain is not compensable unless that pain itself results in a physical disability.  See *Bouldware v. Delta Corp*., 160 Ga. App. 100 (286 SE2d 333) (1981).

3

against a third party. One of the rights conferred to the employer under the workers' compensation law is the right of subrogation against the employee's recovery of damages. Pursuant to OCGA § 34-9-11.1 (b), once an employer's liability under the workers' compensation law has been at least partially paid the employer or its insurer is granted a right of subrogation against the employee's recovery of damages from a third party, up to the amount of workers' compensation benefits paid to the employee.[4]

> However,
>
> the employer's or insurer's recovery under this Code section shall be limited to the . . . amount of . . .benefits . . . paid under this chapter and shall only be recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.

Id. Just as in the case of subrogation by an automobile insurance carrier or a medical insurer, "the injured party's employer [is] not permitted to seek reimbursement from the injured party unless and until the amount of settlement

---

[4] In fact, this Code section grants the employer the right to intervene in an action brought by the employee against a third party in order to protect its subrogation right, and even the right to assert the employee's claim against the third party in an action brought either in the employer's name or the name of the employee, if the employee does not file his or her own action within a specified period of time. Id. at (c).

received by or the judgment awarded to the injured party exceeds the injured party's economic and noneconomic damages." *Thurman v. State Farm Mut. Auto. Inc. Co.*, 278 Ga. 162, 164 (598 SE2d 448) (2004); see also *Ga. Electric Membership Corp. v. Garnto*, 266 Ga. App. 452, 453 (597 SE2d 527) (2004). That is, subrogation is permitted only if the injured employee will be left whole after the workers' compensation benefits are subtracted from the amount recovered from the third party. Such a determination is to be made by the trial court, not a jury. See *Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 256 Ga. App. 866, 872-873 (2) (570 SE2d 60) (2002).

In determining whether an injured employee will be left "fully and completely compensated" after subrogation by the employer, the trial court is to consider the issue of full compensation as that term is used in the subrogation statute of the workers' compensation law, not pursuant to the general principals of tort law, by which compensation is diminished as a result of defenses available to the defendant. Id. at 872 (2) (570 SE2d 60) (2002), quoting *Homebuilders Assn of Ga. v. Morris*, 238 Ga. App. 194, 196 (518 SE2d 194) (1999). That is, OCGA § 34-9-11.1 speaks of full compensation for the employee's economic and noneconomic damages, and "does not direct courts

5

to take into account the employee's contributory/comparative negligence or assumption of the risk, and we must assume the omission was intentional." *Homebuilders Ass'n of Ga.*, supra, 238 Ga. at 196. By the same reasoning, full compensation for the employee's damages does not refer to the damages awarded against the nonparty defendant after the defendant's liability has been diminished by the apportionment rule of OCGA § 51-12-33 (c). Only when the amount awarded to the employee plaintiff plus the value of the workers' compensation benefits received exceeds the injured employee's full economic and noneconomic damages will the employer or its insurer be permitted to recover some or all the benefits it has paid pursuant to the subrogation statute.

If a percentage of fault, in the tort sense of the word, is assessed to the employer as a nonparty in a lawsuit by the employee against a third party, and that percentage of fault reduces the tort damages awarded to the plaintiff from the third-party defendant, then the injured employee will not have been fully compensated for his or her injury.[5] This eliminates one of the rights granted to

---

[5] Only if the employer is found by the trier of fact to bear no fault for the plaintiff-employee's damages, and yet the employer paid workers' compensation benefits to the employee, will the plaintiff remain whole once the damages awarded against the third party defendant are reduced by the value of workers' compensation benefits paid, pursuant to the subrogation rule.

the employer in exchange for the no-fault liability imposed against it under the law. That is, as a result of applying OCGA § 51-12-33 (c) to the fault of an employer, the employer's right of subrogation will be moot.

Applying subsection (c) to the fault of employers infringes upon another benefit granted to employers in exchange for their no-fault liability under the workers' compensation law. Since workers' compensation is the exclusive remedy available against an employer for injuries covered under the law, one of the trade-offs to the no-fault liability imposed by the law is the employer's exemption from the costs associated with defending tort litigation. Even though OCGA § 51-12-33 does not diminish the employer's immunity from tort liability, it means the employer may very likely be required to bear the expense and business disruption of responding, as a nonparty, to discovery in the employee-plaintiff's action against a third-party defendant seeking to apply the apportionment rule to the fault of the employer. The defendant to that litigation will want to maximize the fault assigned to the employer in order to diminish the damages it must pay if found liable to the employee plaintiff, and the plaintiff will want to minimize the fault assigned to the employer in order to maximize recovery from the defendant. The dispute over the employer's percentage of

fault for the plaintiff's injury may very well be protracted and expensive to the employer, even though the employer "has no dog in the fight," since it is clear that a finding of fault against an employer does not create liability on the part of the employer for damages. See OCGA § 51-12-33 (e). Predictably, the parties will seek the production of business records and other documents from the employer, may seek access to the workplace for observation and testing of equipment, and may seek the discovery and trial testimony of managers and co-employees, thus requiring the employer to incur substantial litigation costs and economic down-time to respond. Predictably, the cost to an employer to respond to discovery when its own fault is at issue will be greater, perhaps substantially so, than the costs to respond if its fault were not at issue in the lawsuit against the third party. This undercuts the employer's bargained-for exemption from incurring tort litigation costs.[6]

---

[6] Regardless of the expense that may be incurred by a nonparty employer whose fault becomes an issue at trial, that the nonparty employer has no interest in the outcome of whether it is deemed to have some fault highlights another issue–the uncertainty of determining the actual fault of a party without that party's interested participation in the suit. That is one of the reasons the Uniform Comparative Fault Act of 1977 provides for apportionment of damages only to parties to the action and excludes nonparties from being assigned a portion of responsibility for plaintiff's injury. See Jonathan Cardi, *Apportioning Responsibility to Immune Nonparties: An Argument Based on Comparative Responsibility and the Proposed Restatement (Third) of Torts*, 82 IOWA L. REV. 1293, 1335 (1997) (citing Uniform Comparative Fault Act §2 (a), 12 U.L.A. 46 (Supp. 1990) and former comment to

Preventing the injured employee from being fully compensated for his or her injury obviously prejudices the employee. While it is part of the employee's trade-off, pursuant to the quid pro quo of the workers' compensation scheme, not to be able to recover tort damages from the employer, no support whatsoever exists for the notion that the workers' compensation law is meant to deprive an employee of his or her ability to recover fully in tort from a third-party tortfeasor whose fault is shown to be a proximate cause of a work-related injury. But that is exactly the consequence of including an employer, exempt from tort liability under the workers' compensation law, as a nonparty, pursuant to OCGA § 51-12-33 (c), whose tort liability may be considered by a trier of fact to reduce a damages award from a third-party defendant. See *Carroll v. Whitney*, 29 SW3d 14, 19 (Tenn. 2000) (discussing the "basic unfairness" that would result if apportionment of the plaintiff's employer's fault were permitted to reduce the damages due a plaintiff in a tort action against a third party where the employer could then reduce the award further by exercising its right of subrogation under

section 2 (a), now found at Comment at "Parties").

9

the workers' compensation law)[7]. Only in a case in which the value of the workers' compensation benefits paid to the employee meets or exceeds the amount by which the third-party's liability has been reduced will the plaintiff be fully compensated for his or her injuries. This will be a rare case, as illustrated by the many exemptions of the full measure of an employee's loss from workers' compensation benefits.[8]

---

[7] Responding to the majority opinion, I do not believe the Tennessee Supreme Court's discussion of the "basic unfairness" of permitting apportionment to reduce damages due a plaintiff in an action against a third party, when the employer could then reduce the award pursuant to subrogation permitted under workers' compensation law, to be diminished by the fact that Tennessee's apportionment law was created by case law and not by statute.

[8] An employer's statutory liability to an injured employee under the workers' compensation law does not correlate to the amount of damages the employer would owe the employee if it were subject to common law tort liability, or to the employer's percentage of fault as applied to the employee's damages if OCGA § 51-12-33 (c) is deemed to apply to an employer. This is because workers' compensation benefits are defined by statute and not according to the employee's actual damages that may, or may not, have been proximately caused by the employer's negligence, if any. Because the benefits are due regardless of fault, they may exceed in some instances the amount the employer would owe if it were liable for damages in tort. But in many instances, workers' compensation benefits will not equal the damages that would be owed if the employer were liable in tort. For example, as noted in footnote 4 of this opinion, supra, typically, the employee may not recover benefits for pain and suffering, whereas pain and suffering may be included in tort damages. Also, workers' compensation benefits do not fully cover lost wages, whereas full compensation for lost wages may be included in tort damages.

The workers' compensation subrogation statute was originally enacted in 1992,[9] well before the apportionment statute was rewritten in 2005[10] to provide for the apportionment of fault to nonparties in an action for personal injury or injury to property. All statutes are presumed to be enacted by the General Assembly with full knowledge of the existing law and are

> to be construed in connection and in harmony with the existing law, and as part of a general and uniform system of jurisprudence, and its meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.

(Punctuation and citations omitted.) *Retention Alternatives, Ltd. v. Hayward*, 285 Ga. 437, 440 (678 SE2d 877) (2009). I conclude that the General Assembly did not intend the apportionment statute to upset the carefully balanced interests of the employer and employee set forth in Georgia's workers' compensation law. Given the unique statutory rules applicable to workers' compensation benefits and obligations, and for the reasons set forth in this dissenting opinion, I would hold that OCGA § 51-12-33 (c) does not permit a jury to assess a percentage of fault to a nonparty employer of a plaintiff who, as here, sues a

---

[9] Ga. L. 1992, p. 1942, § 2.

[10] Ga. L. 2005, p.1, § 12/SB 3.

11

third party for injuries sustained in a work-related incident because to do so would interfere with the careful balance of interests set forth in the workers' compensation law. I would reverse this Court's holding in *Zaldivar* with respect to its application to nonparties who are employers subject to the workers' compensation laws for the plaintiff's injury. I am authorized to state that Justice Hunstein joins in this dissent.